232 N.J. Super. 393 (1989)
557 A.2d 332
JOAN MARIE & GREGORY NIKIPER, PLAINTIFFS-RESPONDENTS, CROSS-APPELLANTS,
v.
MOTOR CLUB OF AMERICA COS. AND ROBERT LANE, DEFENDANTS-APPELLANTS, CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 11, 1989.
Decided April 27, 1989.
*394 Before Judges KING, ASHBEY and SKILLMAN.
Stacy L. Moore, Jr., argued the cause for appellants (Parker, McCay & Criscuolo, attorneys; Jeffrey D. Schaffer, on the brief).
Susan L. Moreinis, argued the cause for respondents.
The opinion of the court was delivered by KING, P.J.A.D.
*395 This appeal presents a question of interpretation of the optional underinsured automobile insurance coverage provided under the statutory definition mandated by N.J.S.A. 17:28-1.1e. We conclude that the plaintiff's recovery of $150,000 from two joint tortfeasors' liability insurance carriers, a sum greater than her underinsured motorist's coverage (UIM) limit of $100,000, bars her UIM claim and we reverse. We conclude that the statute requires that all recoveries from liability insurance must be credited against the UIM limits of coverage.
Plaintiff Joan Marie Nikiper was very seriously injured in an automobile accident on May 28, 1984. She was a passenger in Gregory Nikiper's car insured by Motor Club of America (MCA). The plaintiff settled her bodily injury claim for damages against the operators of the other two vehicles involved in the accident. Prudential Insurance Company paid its policy limits of $100,000 on behalf of its insured, Tanfield Kotlikoff, who also made an additional payment of $5,000 from his personal assets in settlement of his exposure in excess of the policy limits. Ohio Casualty Insurance Company paid its policy limits of $50,000 on behalf of its insured, Michael Giletto. MCA paid nothing on its liability coverage because all parties agreed that its insured driver, Gregory Nikiper, was not at fault. Gregory Nikiper's automobile, in which plaintiff was a passenger when she was injured, had $100,000 underinsured motorist coverage with MCA.
In this law suit the plaintiff claims that the Giletto car, insured for liability with Ohio for $50,000, was "underinsured" for UIM purposes. She seeks the difference between her recovery against Ohio Casualty and Giletto on her liability claim for their coverage limit ($50,000) and the available UIM coverage of MCA ($100,000), or a sum of $50,000. MCA asserts that since plaintiff has recovered a total of $155,000 from Ohio Casualty, Prudential, and Prudential's insured, a sum in excess of the UIM limits of $100,000 of the MCA policy, she has no *396 right to any further recovery under the UIM feature. There is no dispute that plaintiff's claim far exceeds $155,000 in value. The Law Division judge held MCA liable for the $50,000 difference between the $50,000 limits of the Ohio Casualty liability policy and the $100,000 limits of the MCA UIM policy. MCA appeals this decision rendered on the fourth count of the complaint.
N.J.S.A. 17:28-1.1a requires all motor vehicle liability policies issued in this State to include bodily injury coverage with limits of $15,000/$30,000 for injury to the insured by an uninsured motorist (UM). See also N.J.S.A. 39:6A-14. In addition, carriers must offer, as an option, underinsured motorists coverage (UIM) in an amount up to $250,000 for each person and $500,000 for each accident. The UIM coverage may not exceed the policy's liability limits. N.J.S.A. 17:28-1.1b. See Dancy v. Popp, 114 N.J. 570, 572 (1989); Tyler v. New Jersey Automobile Full Insurance Underwriting Association, 228 N.J. Super. 463 (App.Div. 1988).
The result in the case before us turns on our interpretation of N.J.S.A. 17:28-1.1e, which describes the optional UIM coverage as follows:
e. For the purpose of this section, (1) "underinsured motorist coverage" means insurance for damages because of bodily injury and property damage resulting from an accident arising out of the ownership, maintenance or use of an underinsured motor vehicle. Underinsured motorist coverage shall not apply to an uninsured motor vehicle. A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery. A motor vehicle shall not be considered an underinsured motor vehicle under this section unless the limits of all bodily injury liability insurance or bonds applicable at the time of the accident have been exhausted by payment of settlements or judgments. The limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he has recovered under all bodily injury liability insurance or bonds. [Emphasis supplied.]
*397 Plaintiff asserts that the UIM coverage is available when any individual vehicle involved in an accident is insured for less than the UIM limits available to her, assuming the value of her total claim exceeds $150,000, which all agree it does. MCA urges that since the aggregate amount of the settlement recovered from all tortfeasors exceeds the $100,000 UIM coverage, plaintiff, in effect, has no UIM claim. We conclude that where the amount paid by the insurors for the multiple tortfeasors equals or exceeds the amount of the UIM coverage, plaintiff has no UIM claim. We reverse.
This resolution is required by the language of the subsection (e) and is consistent with the legislative purpose of the statute. In Longworth v. Van Houten, 223 N.J. Super. 174 (App.Div. 1988), a case involving the conflicting exhaustion and consent-to-settle clauses in the standard auto policy, Judge Pressler reviewed the history of UIM coverage in New Jersey. "Underinsured motorist coverage came into the statutory law with the passage of L. 1983, c. 65, § 5 and L. 1983, c. 362, § 1, which amended N.J.S.A. 17:18-1.1." Id. at 176. See also Wasserman v. Wharton, Lyon & Lyon, 223 N.J. Super. 394 (App.Div. 1988). Our automobile insurance statutes had made no provision for UIM coverage before that date but some carriers had offered it voluntarily. Judge Pressler described the design of the 1983 amendments to N.J.S.A. 17:28-1.1 this way:
The approach adopted by the Legislature was to require each insurer issuing an automobile liability policy not only to provide $15,000/30,000 of UM coverage but also to offer its insured the option of purchasing additional protection up to limits of his liability coverage but not exceeding $250,000/500,000 against the risk of underinsured as well as uninsured tortfeasors. The effect of the coverage is to require the insurer, as a matter of contractual agreement, to pay its insured, to the extent of the coverage purchased, the liability damages which the insured is entitled to from the negligent uninsured or underinsured tortfeasor less, in the case of the underinsured tortfeasor, the amount of the tortfeasor's coverage. The essential distinction between UM and UIM coverage is that if an uninsured tortfeasor is involved, his victim is able to seek initial and primary recourse from his own liability carrier. If an underinsured tortfeasor is involved, however, his victim may not pursue his contractual UIM right against his own liability insurer until he has first recovered the tortfeasor's liability limit by settlement or judgment. That recovery is then offset against *398 the maximum UIM coverage provided for by the policy. Thus, the UIM, but not the UM, coverage has essential attributes of excess rather than primary protection. [Longworth v. Van Houten, 223 N.J. Super. at 177-178.]
No case to date has considered the UIM coverage in the context of multiple tortfeasors. We perceive two sentences in subsection (e) as controlling the resolution of this dispute  the third and the fifth.
A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom a recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery.
....
... The limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he has recovered under all bodily injury liability insurance or bonds. [N.J.S.A. 17:28-1.1e; emphasis supplied.]
Since the Giletto car had a liability insurance policy of $50,000 and the Nikiper car had UIM coverage of $100,000 with MCA, the Giletto car clearly was "underinsured" within the definition in the first sentence quoted above. But the second pertinent sentence for purposes of resolving the problem before us provides for a pro tanto credit against the UIM coverage which reduces the available limits of that coverage by "the amount ... recovered under all bodily injury liability insurance." Ibid. We deem the word "all" in this sentence dispositive. The design of the statute obviously was to reduce the available UIM coverage to the extent that third-party liability recovery was available. Thus since plaintiff had recovered $150,000[1] available to her from the carriers for the two tortfeasors, the limits of MCA's UIM coverage were more than exhausted by that credit.
In sum, plaintiff's UIM recovery is controlled contractually by the amount of the UIM policy limits purchased and available to her, not fortuitously by the number of tortfeasors involved in *399 the accident. Of course, if higher UIM limits had been purchased and available on the Nikiper vehicle, the plaintiff's recovery could have been greater, but we find nothing in the statutory language to suggest that the limit of the UIM coverage should be separately and individually available to a claimant as to each distinct joint tortfeasor. The language requires the opposite result.
We reject plaintiff's argument that the statute is ambiguous in this context. We conclude that "the language [of N.J.S.A. 17:28-1.1e] is clear and must be applied as written." See Ingraham v. Travelers Companies, 217 N.J. Super. 126, 128 (App.Div. 1987), aff'd o.b. 110 N.J. 67 (1988). The statute allows no room for "liberal construction" in this circumstance. Ibid. The fact that the result may well differ if one or more of the tortfeasors were uninsured (N.J.S.A. 17:28-1.1a), rather than underinsured, cannot, in itself generate statutory ambiguity in subsection (e) where the language of that subsection is otherwise clear as to reduction of the UIM claim by all amounts recovered under liability insurance. The UM coverage feature operates as liability coverage on each uninsured tortfeasor; the UIM coverage operates as a first-party excess coverage as to an underinsured claim. The purpose of the UIM feature is to provide as much coverage as an insured is willing to purchase, up to the available limits, against the risk of an underinsured claim. The purchaser decides the amount of the coverage; the number of tortfeasors does not.
As Judge Pressler noted in Longworth, 223 N.J. Super. at 178 n. 3, "[t]his deduction provision of the statute comports with pre-statutory judicial construction of voluntarily offered UIM coverage in this state. See Wert v. Picciano, 189 N.J. Super. 178 (Law Div. 1982)." The theory is that there is underinsurance relative to the limits for which the injured party, or her host driver or owner, has contracted for, not that any particular tortfeasor motorist is underinsured. Wert v. Picciano, 189 N.J. Super. at 183. In the context of multiple claimants against a single tortfeasor, we recently stated that "there is no recovery *400 at all from the underinsured motorist coverage unless it has higher limits than the liability coverage." Tyler v. New Jersey Automobile Full Insurance Underwriting Association, 228 N.J. Super. 463, 466-467 (App.Div. 1988) (four claimants where UIM limits $30,000 and liability limits $50,000  no recovery on UIM); accord, Landi v. Gray, 228 N.J. Super. 619 (App.Div. 1988); Wolfe v. Sperling Agency, Inc., 228 N.J. Super. 428, 435 (Law Div. 1988). Here we confront the corollary situation  one claim against several tortfeasors. We conclude that the statute compels accumulation of all liability insurance recovery against the insured's own UIM limits of recovery. This is consistent with the reality that plaintiff's host bought a single UIM first-party coverage feature with $100,000 limits, not an excess policy for several liability policies.
We do not view, as plaintiff here suggests we should, the reference to "all bodily injury liability insurance or bonds" in the fifth sentence of subsection (e) as a reference limited to the coverage of each separate tortfeasor against whom recovery is sought. Indeed, to read the fifth sentence of subsection (e) the way plaintiff desires would be to dilute the meaning of the word "all" as used in that sentence. To rewrite the fifth sentence to, in effect, add the phrase "from each individual tortfeasor" would be to reconstruct the statute, not to interpret it as written.
Nationwide Mutual Insurance Company v. Scott, 234 Va. 573, 363 S.E.2d 703, 705 (1988), relied upon by plaintiff, is unpersuasive because the Virginia statute there construed simply had no provision similar to our statute for a reduction by the amount recovered "under all bodily injury liability insurance" coverage. We find the Minnesota cases urged by plaintiff as inconclusive on the point because the wording of that state's statute also does not appear to address the issue of credit for insurance recoveries. See Schmidt v. Clothier, 338 N.W.2d 256 (Minn. 1983); Johnson v. American Family Mutual Insurance Company, 413 N.W.2d 172, 176 n. 1 (Minn. Ct. App. 1987). Finally, the Connecticut regulations construed *401 as controlling in McAllaster v. Bruton, 655 F. Supp. 1371, 1377 (D.Me. 1987), specifically provided for a reduction of limits to the "extent that damages have been (1) paid by or on behalf of any person responsible for the injury"  quite different than our statute.
On the cross-appeal, plaintiff contends that the Law Division judge erred in dismissing Counts Two and Three of her complaint without a plenary hearing. In those counts plaintiff made claims against MCA for punitive damages, unconscionable commercial practice, deception, consumer fraud, and misrepresentation arising out of the plaintiff's Personal Injury Protection (PIP) claims. The judge dismissed these counts on the authority of Pierzga v. Ohio Casualty, 208 N.J. Super. 40 (App.Div. 1986), certif. den. 104 N.J. 399 (1986); Kubiak v. Allstate Ins. Co., 198 N.J. Super. 115 (App.Div. 1984), certif. den. 101 N.J. 290 (1985); and Milcarek v. Nationwide Ins. Co., 190 N.J. Super. 358 (App.Div. 1983). We agree with his decision on those counts and affirm on the cross-appeal for the reasons given in his oral opinion of August 4, 1988. There is no appeal on the First Count of the complaint.
Reversed on the appeal; affirmed on the cross-appeal.
NOTES
[1] We eschew consideration of the $5,000 recovered from Kotlikoff personally as unnecessary for our purposes.