247 N.J. Super. 94 (1991)
588 A.2d 870
ROBERT W. BAUTER, PLAINTIFF-APPELLANT,
v.
HANOVER INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 16, 1990.
Decided April 1, 1991.
Before Judges DEIGHAN and A.M. STEIN.
Rochelle Gizinski argued the cause for appellant (Richard A. Amdur, P.C., attorney, Marguerite A. Maggs on the brief).
*95 Evan L. Goldman argued the cause for respondent (Mezey, Mezey, Goldman & Zublatt, attorneys, Miriam R. Rubin on the brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
Plaintiff Robert W. Bauter seeks to recover under an underinsured motorist (UIM) provision of an insurance policy issued to him by defendant Hanover Insurance Company (Hanover). After discovery was completed, the parties cross-moved for summary judgment. On October 27, 1989, Judge Peskoe denied plaintiff's motion and granted defendant's motion for summary judgment. We affirm.
The facts are not in dispute. In March 1986, plaintiff's wife, Kathleen Bauter, was killed in a motor vehicle collision while a passenger in an automobile operated by plaintiff. Plaintiff brought a personal injury and wrongful death action against the intoxicated driver of the other car and settled that claim for $25,000, the proceeds of the intoxicated driver's automobile liability policy. Plaintiff also settled a dram shop action against Ralph's Tavern & Liquors, the liquor establishment that served the intoxicated driver, for $500,000, the proceeds of a dram shop liability policy issued to Ralph's Tavern & Liquors.
Plaintiff's insurance policy with Hanover provided for UIM coverage in the amount of $300,000. He made a claim against Hanover for $275,000, the policy limits on the UIM coverage less the $25,000 recovered from the other driver. Hanover denies liability and contends that since the dram shop action was settled in excess of the $300,000 UIM coverage, it has no obligation to pay plaintiff under the UIM coverage provision of his automobile policy.
N.J.S.A. 17:28-1.1(e) defines UIM coverage as follows:
For the purposes of this section, (1) "underinsured motorist coverage" means insurance for damages because of bodily injury and property damage resulting from an accident arising out of the ownership, maintenance or use of an *96 underinsured motor vehicle. Underinsured motorist coverage shall not apply to an uninsured motor vehicle. A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery. A motor vehicle shall not be considered an underinsured motor vehicle under this section unless the limits of all bodily injury liability insurance or bonds applicable at the time of the accident have been exhausted by payment of settlements or judgments. The limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he has recovered under all bodily injury liability insurance or bonds. [Emphasis added.]
Plaintiff argues that the legislative intent was to trigger UIM coverage when all of the tortfeasor's automobile liability coverage is exhausted and that a dram shop policy may not be set off against UIM coverage. Hanover maintains that the statute clearly and unambiguously requires a set off against all liability policies of the parties and not merely automobile liability policies.
This case presents a novel issue as no New Jersey case to date has considered whether the statutory language, "all bodily injury and property damage liability bonds and insurance policies," includes non-automobile insurance policies such as dram shop insurance. In interpreting N.J.S.A. 17:28-1.1(e), it is important to keep in mind the purpose behind New Jersey's UIM statute. The states are split in their approach to underinsurance. M. Bender, No-Fault & Uninsured Motorist Automobile Insurance § 30:40(2)(c) (1984). In some states, the coverage is designed and interpreted to compensate an injured party only for the amount of UIM coverage purchased. In other states, however, the coverage is designed to compensate the plaintiff for the full value of the injuries, allowing plaintiff to collect UIM benefits above and beyond recovery under other liability policies. Id. The purpose of New Jersey's statute is to protect the insured up to the UIM limits purchased and not to make an injured person whole again. See Nikiper v. Motor Club of America Cos., 232 N.J. Super. 393, 399, 557 A.2d 332 *97 (App.Div. 1989). In Nikiper, this court stated that "the purpose of the UIM feature is to provide as much coverage as the insured is willing to purchase, up to the available limits, against the risk of an underinsured claim." Id. at 399, 557 A.2d 332. Referring to the provision of the statute requiring a setoff of prior recoveries against the UIM limits, the court noted that the theory behind UIM coverage is that "there is underinsurance relative to the limits for which the injured party has contracted for as opposed to protecting the individual against any particular tortfeasor." Id.
Several New Jersey decisions that involved only automobile insurance proceeds have concluded that the statutory language, "all bodily injury and property damage liability bonds and insurance policies," is clear and unambiguous and should be read literally to require an offset of all available automobile insurance policies. See Prudential Ins. v. Johnson, 238 N.J. Super. 1, 568 A.2d 1193 (App.Div. 1989); Nikiper, 232 N.J. Super. 393, 557 A.2d 332; Tyler v. New Jersey Auto. Full Ins. Underwriting Ass'n, 228 N.J. Super. 463, 465-67, 550 A.2d 168 (App.Div. 1988); Longworth v. Van Houten, 223 N.J. Super. 174, 176-78, 538 A.2d 414 (App.Div. 1988). Although none of these cases involved dram shop insurance or any other type of non-automobile liability insurance, they provide guidance in resolving the present issue.
In Prudential Insurance v. Johnson, Johnson, who carried $100,000 UIM coverage, was injured in an automobile accident and sued three automobile tortfeasors. He settled with the drivers' insurance carriers for a cumulative amount of $108,500. 238 N.J. Super. at 3-4, 568 A.2d 1193. One driver, Wilkie, had a $100,000 policy limit and settled with Johnson for the full amount. Another driver, Atkins, had a $15,000 policy limit and settled with Johnson for only $8,500 because the insurance carrier had settled with another injured party for the remaining $6,500. Id. Johnson sought to collect UIM benefits from his insurer, Prudential, arguing that because Atkins was underinsured, Johnson was entitled to collect $91,500 in UIM benefits *98 from his carrier, representing the $100,000 policy limits of his UIM coverage less the $8,500 previously recovered from Atkin's insurer. Id.
In denying Johnson's UIM claim, this court held:
Under the explicit and unambiguous language of this statute, the insureds' underinsured motorist coverage is to be reduced by the amount that he or she has recovered under all bodily injury insurance or bonds. This statute compels accumulation of all liability insurance recovery against the insured's own UIM policy limits of recovery. Here, Johnson had $100,000 UIM coverage under his Prudential policy. He settled his personal injury claims against Wilkie and Atkins for a total of $108,500. Since Johnson received an amount greater than his UIM limits, he cannot collect UIM benefits from Prudential.
Id. at 5, 568 A.2d 1193. (emphasis supplied).
Similarly, in Nikiper, plaintiff sought UIM benefits after settling liability claims against two automobile tortfeasors for their respective $100,000 and $500,000 liability policy limits. 232 N.J. Super. at 394, 557 A.2d 332. Plaintiff argued that UIM benefits were available against each separate tortfeasor involved in an accident when the vehicle was insured for less than plaintiff's own UIM limits. Id. at 397, 557 A.2d 332. The court ruled that plaintiff had no UIM coverage claim because the amount recovered from all tortfeasors' insureds exceeded the amount of plaintiff's UIM coverage limits. Id. The court stated:
Plaintiff's UIM recovery is controlled contractually by the amount of the UIM policy limits purchased and available to her, not fortuitously by the number of tortfeasors involved in the accident. Of course, if higher UIM limits had been purchased and available to the Nikiper vehicle, the plaintiff's recovery could have been greater, but we find nothing in the statutory language to suggest that the limit of UIM coverage should be separately and individually available to a claimant as to each distinct joint tortfeasor. The language requires the opposite result.

Id. at 398-99, 557 A.2d 332 (emphasis supplied). Rejecting plaintiff's interpretation of the phrase "all bodily injury liability insurance or bonds" in the fifth (last) sentence of N.J.S.A. 17:28-1.1(e), this court stated:
Indeed, to read the fifth [last], sentence of subsection (e) the way plaintiff desires would be to dilute the meaning of the word "all" as used in that sentence. To rewrite the fifth [last] sentence to, in effect, add the phrase *99 "from each individual tortfeasor" would be to reconstruct the statute, not to interpret it as written.
Id. at 399, 557 A.2d 332. Finding that the statute was unambiguous, the court concluded that "the language [of N.J.S.A. 17:28-1.1(e)] is clear and must be applied as written," requiring accumulation of all liability insurance policies of all tortfeasors against plaintiff's UIM benefits. Id. at 399, 557 A.2d 332.
Because plaintiff in this case has recovered more than his UIM limits, permitting him to recover UIM benefits from Hanover would be contrary to the language of N.J.S.A. 17:28-1.1(e). Rather, requiring a set-off of all available non-automobile liability insurance proceeds, including dram shop insurance proceeds, would further the legislative intent behind N.J.S.A. 17:28-1.1(e) of providing UIM coverage merely as a gap filler and not to compensate the injured plaintiff for the full value of his injuries.
In support of his position, plaintiff cites American Universal Insurance Co. v. DelGreco, 205 Conn. 178, 530 A.2d 171 (1987) in which the Supreme Court of Connecticut held that Connecticut's UIM statute, Conn. Gen. Stat. § 38:175c (1983), did not require a dram shop policy to be set off against UIM coverage. In that case, the administrator of DelGreco's estate claimed UIM benefits under a policy issued to the decedent. The UIM carrier refused to pay UIM benefits, contending that it was entitled under both the policy and Connecticut law to a set off against recovery under a dram shop policy.
Plaintiff argues that because the language of the New Jersey statute is essentially the same as that contained in the Connecticut statute, the approach followed in American Universal should be followed here. Although the facts of American Universal are similar to this case, the statutes involved are significantly different. Connecticut's statute provides:
(b)(1) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of *100 judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.
(2) For the purposes of this section, an "underinsured motor vehicle" means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of this subsection.
Conn. Gen. Stat. § 38-175c(b)(1) and (2) (emphasis supplied).
Acknowledging that the language is not "crystal clear" in defining whether a dram shop policy is a "bodily injury liability bond or insurance policy," the court stated that subsection (b)(2) describes insurance policies covering the tortfeasor's motor vehicle. 530 A.2d at 180. The court stated that "[a]lthough the language of subsection (b)(1) does not specifically limit the phrase `all bodily injury bonds or insurance policies applicable at the time of the accident' to the tortfeasor's motor vehicle as does subsection (b)(2), when it is read together with the entire statute, in order for the legislation to be consistent, it must also be interpreted as referring to any automobile policy issued to the tortfeasor." Id. (emphasis in original). The key language in the Connecticut statute, "a motor vehicle with respect to which," is absent from New Jersey's statute.
Furthermore, unlike the New Jersey statute, which is intended to act as a gap filler, the Connecticut Supreme Court, upon reviewing their statute's legislative history, found that to interpret the Connecticut statute to require a set-off of dram shop insurance proceeds would "defeat the remedial purpose of [Connecticut's] underinsured motorist coverage," which is "to protect and make whole a person injured at the hands of an uninsured/underinsured motorist." Id. 530 A.2d at 181 (emphasis in original).
Next, we address plaintiff's contention that a dram shop payment made on behalf of a liquor establishment that serves alcohol to an intoxicated person who thereafter causes injury to a third party is not "a person against whom recovery is *101 sought" within the meaning of N.J.S.A. 17:28-1.1(e) (emphasis added). The first sentence of N.J.S.A. 17:28-1.1(e) provides, however, that UIM coverage is "insurance for damages because of bodily injury and property damage resulting from an accident arising out of the ... use of an underinsured motor vehicle." It cannot be said that the tortfeasor's vehicle-related conduct was independent of the liability of the tavern keeper in serving alcoholic beverages to the UIM tortfeasor. Indeed, the essential element giving rise to a claim against the tavern keeper was excessive consumption of alcoholic beverages served by the tavern keeper to the UIM tortfeasor. There could be no liability against the tavern keeper in this case but for the use of the tortfeasor's UIM motor vehicle. There can be no doubt that the motor vehicle collision resulted directly from an "accident arising out of the ... use of an underinsured motor vehicle." Consequently, it would be in furtherance of the legislature's intention in holding that a liquor establishment subject to dram shop liability is a "person against whom recovery is sought."
Finally, we note the following condition in plaintiff's automobile insurance policy issued by defendant:
With respect to an accident with an underinsured motor vehicle, the limit of liability shall be reduced by all sums:
1. Paid because of the bodily injury or property damage by or on behalf of persons or organizations who may be legally responsible.
Ralph's Tavern and Liquors has admitted responsibility for the injuries sustained and thus is a party legally responsible. The language of the condition is clear and unambiguous and permits Hanover to offset the amount received under the dram shop policy. See Bateman v. Motorists Mutual Ins., 377 Pa.Super. 400, 547 A.2d 428 (Pa.Super. 1988), petition for appeal granted, 522 Pa. 571, 559 A.2d 33 (1989) (UIM insurer entitled to offset amounts received by insured from settlement of dram shop and products liability actions where policy provided: "Any amounts otherwise payable for damages under [underinsured] coverage shall be reduced by all sums: 1. Paid *102 because of the bodily injury by or on behalf of persons or organizations who may be legally responsible"); contra American Universal, 205 Conn. 178, 530 A.2d 171 (payment made pursuant to dram shop policy is not made by a person "responsible for the injury" or "on behalf of any person responsible for the injury;" rather, it is made on behalf of a liquor establishment that serves alcohol to an intoxicated person who thereafter causes injury to a third party).
We further point out that UIM coverage is relatively inexpensive. See, e.g., Wasserman v. Wharton, Lyon & Lyon, 223 N.J. Super. 394, 400, 538 A.2d 1270 (App.Div. 1988). Since the coverage offers significant benefits to the insured, its affordability at maximum levels should not be prejudiced by permitting resort to its protection beyond the strict legislative contemplation.
In conclusion, because plaintiff's recovery exceeded the UIM policy limit, he does not have a claim against Hanover for UIM benefits.
Affirmed.