813 A.2d 608 (2000)
356 N.J. Super. 546
Christine R. VASSILIU, as General Administratrix and as Administratrix ad Prosequendum of the Estate of Hristos Vassiliu, Deceased, Plaintiffs,
v.
DAIMLER CHRYSLER CORPORTION, Mt. Ephraim Dodge, Inc., Foulke Management Corporation and Shaun L. O'Brien, jointly, severally, or in the alternative, Defendants,
Christine R. Vassiliu, as General Administratrix and as Administratrix ad Prosequendum of the Estate of Hristos Vassiliu, Deceased, Plaintiffs,
v.
Prudential Property & Casualty Insurance Company; Selective Insurance Company and Parkway Insurance Company, Defendants.
Superior Court of New Jersey, Law Division, (Civil), Camden County.
Decided December 18, 2000.
*609 Louis J. DeVoto, Ferrara, Rossetti & DeVoto, Cherry Hill, for Plaintiffs.
Stephen G. Sobocinski, Marlton, Tucker & Munyon, for Defendant, Selective Insurance Company.
Barbara J. Davis, Marshall, Dennehey, Warner, Coleman & Goggin, Cherry Hill, for Defendant, Prudential Property & Casualty Insurance Company.
COOK, J.S.C.
This case presents an issue of first impression: should a wrongful death action and a survival action be considered as two separate claims, for purposes of determining the coverages available under "per person" or "per injury" split limits liability, uninsured motorist (UM) or underinsured motorist (UIM) insurance policies? The answer must be in the affirmative, since by statute, and under the recent pronouncement of the Supreme Court in Smith v. Whitaker, 160 N.J. 221, 734 A.2d 243 *610 (1999), wrongful death actions and survival actions are treated as separate and discrete actions affording different damages remedies to different parties, even though they may arise from the identical occurrencethe death of a family member from injuries sustained in a vehicular accident. Accordingly, since the coverage limits of the Prudential liability insurance policy at issue in this case are $15,000/$30,000, a total of $30,000 is available: $15,000 for the wrongful death action, and $15,000 for the survival action. Similarly, since the coverage limits of the Prudential and Selective UIM policies at issue are each $100,000/$300,000, a total of $200,000 in UIM coverage is available: $100,000 for the wrongful death action, and $100,000 for the survival action. As discussed below, these UIM limits are reducible only by the amount of the liability insurance coverages available to defendant Shaun O'Brien.
BACKGROUND
Hristos Vassiliu was injured in a motor vehicle accident on June 24, 1995. He died from his injuries later that day. A survival action claim was brought by the General Administratrix of his estate, and a wrongful death action was brought by his Administratrix ad Prosequendum. The defendants were Shaun O'Brien, the motorist who ran a stop sign at a controlled intersection and broadsided Mr. Vassiliu's van as it was travelling on the through street in the intersection; and Daimler Chrysler Corp. and Mt. Ephraim Dodge, Inc., the manufacturer and seller, respectively, of Mr. Vassiliu's van. The theory alleged against Daimler Chrysler and Mt. Ephraim Dodge was that the seat belt system was defectively designed, the van was thus not "crashworthy", and the defect was a cause of enhanced injuries to and the death of Mr. Vassiliu. See, Poliseno v. General Motors Corp., 328 N.J.Super. 41, 744 A.2d 679 (App.Div.2000) (the crashworthiness doctrine is also referred to as the "second collision" or "enhanced injury" doctrine, the accident itself being the "first collision").
Defendant O'Brien was insured under two liability policies: (a) a $35,000 single limit policy issued by New Hampshire Insurance Co., who has deposited the full limit into court; and (b) a $15,000/$30,000 per person split limits policy issued by Prudential Property & Casualty Insurance Co. ("Prudential"). Prudential has deposited $15,000 from its policy into court. Plaintiffs also made underinsured motorist (UIM) claims under a $100,000/$300,000 UIM policy issued by Prudential, and a $100,000/$300,000 UIM policy issued by Selective Insurance Company ("Selective").[1]
Months before trial, notice was given by plaintiffs' counsel to the UIM carriers, Prudential and Selective, of the pendency of these actions, the trial date, and their right to intervene and participate. See, Zirger v. General Accident Ins. Co., 144 N.J. 327, 676 A.2d 1065 (1996) (a UM/UIM carrier who declines to exercise its opportunity to intervene in the underlying tort litigation is barred from enforcing the arbitration clause in the UM/UIM policy). Neither of the UIM carriers appeared at trial or otherwise intervened in these actions.
Prior to jury selection, the wrongful death action and survival action claims against Daimler Chrysler and Mt. Ephraim Dodge were settled for $215,000, without any admission or adjudication of any fault or liability on the part of those settling *611 defendants. Plaintiffs concede that the settlement amount exceeds the maximum concurrent limits of the UIM policies of Prudential and Selective.
A bench trial was conducted on plaintiffs' wrongful death action and survival action claims against the remaining defendant, Shaun L. O'Brien. She did not assert any contribution or indemnification claim against Daimler Chrysler, nor present any proofs that Daimler Chrysler was a culpable tortfeasor or in any manner at fault or responsible for the accident, Mr. Vassiliu's injuries, or his death. As noted, Prudential and Selective chose not to appear at trial, thereby foregoing their right to establish that Daimler Chrysler was an actually responsible tortfeasor.
In a written opinion, this Court determined that Ms. O'Brien was 100% negligent, and that her negligence was the sole proximate cause of the accident. The wrongful death action and survival action were treated as separate claims, pursuant to N.J.S.A. 2A:15-3 and N.J.S.A. 2A:31-1, et seq., and in accordance with the Supreme Court's pronouncements in Smith v. Whitaker, supra. The sum of $175,000 was awarded to Mr. Vassiliu's estate for the claim brought under the Survival Act, for his injuries, pain and suffering and fear of impending death. The sum of $1,750,000 was awarded to Mr. Vassiliu's dependent intestate survivors for the claim brought under the Wrongful Death Act, plus $8,516.32 for funeral expenses. No appeal was taken by defendant O'Brien.
The matter is now before the Court on two fronts. First, plaintiffs seek to compel payment of an additional $15,000 by Prudential from its liability policy, asserting that under Smith v. Whitaker, supra, the wrongful death action and survival actions are two separate causes of action and claims, and thus Prudential owes $15,000 towards the $175,000 survival action award, plus an additional $15,000 towards the $1,758,516.32 wrongful death action award. Defendant O'Brien joins plaintiffs in this regard, demanding that Prudential pay $30,000 on her behalf to the plaintiffs, towards satisfaction of the judgment that has been entered against her. Second, plaintiffs allege that a total of $200,000 should be available from the $100,000/$300, 000 concurrent UIM policies of Prudential and Selective: $100,000 towards the $175,000 survival action award, and an additional $100,000 towards the $1,758,516.32 wrongful death award. Plaintiffs further recognize that the $200,000 in available UIM coverage is subject to a set-off, credit or reduction by the $65,000 total limits of the underlying New Hampshire and Prudential liability policies. Thus, plaintiffs seek a total of $135,000 in UIM benefits: $67,500 towards the survival action award, and $67,500 towards wrongful death action award.
Prudential and Selective contend that wrongful death action and survival action claims are not separate claims, and thus the total coverage available under their UIM policies is $100,000, not $200,000, less the amounts payable under the Prudential and New Hampshire liability policies. Prudential similarly asserts that only $15,000 is payable under its $15,00/$30,000 split limits liability policy, not $30,000. Finally, Prudential and Selective assert that pursuant to N.J.S.A. 17:28-1.1(e) and Banter v. Hanover Ins. Co., 247 N.J.Super. 94, 588 A.2d 870 (App.Div.1991), no UIM benefits are payable in this case under either UIM policy, since the settlement amount paid by Daimler Chrysler exceeds the limits of the Prudential and Selective policies.
WRONGFUL DEATH AND SURVIVAL ACTIONS AS SEPARATE ACTIONS OR CLAIMS
New Jersey statutes authorize two separate causes of action for the tortious injury *612 to and death of a decedent: (1) a wrongful death action, pursuant to N.J.S.A. 2A:31-1 to -6 ("Death By Wrongful Act"); and (2) a survival action, pursuant to N.J.S.A. 2A:15-3 ("Survivor's Act"), for injuries, lost wages, physical impairment or disability, pain, suffering, hedonic damages, punitive damages or other losses that accrued to the decedent between injury and death. Smith v. Whitaker, 160 N.J. at 230-35, 734 A.2d 243 (wrongful death and survival actions serve different purposes and are designed to provide a remedy to different parties; punitive damages are recoverable in a survival action, even absent an award of compensatory damages for pain and suffering, but not in a wrongful death action); Alfone v. Sarno, 87 N.J. 99, 103-110, 432 A.2d 857 (1981) (New Jersey's wrongful death statute created a cause of action beyond a survival action and based on a different principlea new right of action; a wrongful death action may be maintained despite a previous judgment in the decedent's personal injury action); Eyoma v. Falco, 247 N.J.Super. 435, 589 A.2d 653 (App.Div.1991) (hedonic damages are recoverable in a survival action even though the victim was in a comatose state).
A Wrongful Death Act claim must be brought by the "Administrator ad prosequendum of the decedent", or the executor of the decedent's estate. N.J.S.A. 2A:31-2. A Survival Action claim is brought by the Administrator of the decedent's estate, or his executor. N.J.S.A. 2A:15-3.
The New Jersey Supreme Court has declared on several occasions, most recently in its 1999 decision in Smith v. Whitaker, supra, that a wrongful death action and a survival action are two separate and distinct causes of actions and claims. "Although both types of actions arise from the identical occurrence, i.e., the death of [a family member], they serve different purposes and are designed to provide a remedy to different parties." Id. at 231, 734 A.2d 243 (emphasis added). "The fundamental purpose of a wrongful death action is to compensate survivors [of the decedent] for the pecuniary losses they suffer because of the tortious conduct of others." Id. (emphasis added). "Unlike a wrongful death action, which is a derivative action arising in favor of beneficiaries named under [the Wrongful Death Act]..., the Survivor's Act preserves to the decedent's estate any personal cause of action that decedent would have had if he or she had survived." Id. at 233, 734 A.2d 243 (emphasis added). "The Survivor's Act was intended to be supplementary to the Death Act and to `afford[ ] complete and adequate redress to the estates of those who were injured in person or property by injuries causing death',... by allowing the decedent's estate to recover any loss to the decedent that accrued between injury and death." Id. at 234, 734 A.2d 243 (citations omitted). (emphasis added).
Because wrongful death and survival actions "serve different purposes" and "provide a remedy to different parties", id. at 231, 734 A.2d 243, the elements of the damages recoverable in each action are different, separate and distinct. Survival actions are limited to recovery of predeath damages or losses to the decedent, and may include punitive damages. Wrongful death actions are limited to recovery for pecuniary or economic losses to the decedent's family members that arise from and after his death. Unlike survival actions, punitive damages are not recoverable in wrongful death actions. Id. at 232-35, 734 A.2d 243. Each action has a separate statute of limitations. N.J.S.A. 2A:31-3 (wrongful death action must be brought within 2 years after the decedent's death); N.J.S.A. 2A:14-2 and -23.1 (survival action must be brought within 2 years after the injury or other loss occurred, *613 except that if an action for injuries or other losses incurred by the decedent was not barred as of the date of or less than 6 months prior to his death, the limitations period is extended for at least 6 months after his death).
The Supreme Court earlier addressed the distinction between these two causes of actions in Alfone. There, under the heading, "Independent Aspects of the Wrongful Death Action", the Court referred to "... the distinct nature of the wrongful death action...", noting that "... the wrongful death action creates separate rights in the [decedent's] beneficiaries..." Alfone, 87 N.J. at 108, 432 A.2d 857. The Court rejected the characterization in Knabe v. Hudson Bus Transportation Co., 111 N.J.L. 333, 168 A. 418 (E. & A.1933), of a wrongful death action as being wholly derivative from the decedent's claims for personal injuries, instead holding that because of the distinct nature of wrongful death vis-a-vis survival actions, maintenance of a wrongful death action is not barred by a judgment in a suit brought by the decedent while alive. Id. at 103, 108, 432 A.2d 857. The Court summarized the distinction between these two types of actions as follows:
New Jersey's wrongful death statute created a new cause of action "beyond that which the deceased would have had if he had survived, and based on a different principlea new right of action." Cooper v. Shore Electric Co., 63 N.J.L. 558, 563, 44 A. 633(E. & A. 1899); see 2 F. Harper & F. James, supra, § 24.2 at 1286. Upon the death of a tortiously injured person, the statute provides a right to recover the pecuniary damages incurred by the decedent's next of kin as a result of the death. See N.J.S.A. 2A:31-4, -5; Schumacher, supra, at 115-16. By requiring a "fair and equitable apportionment" of damages in accord with financial need, see N.J.S.A. 2A:31-4, the wrongful death statute addresses specific interests of dependents that receive only incidental protection in any surviving personal injury suit, see N.J.S.A. 2A:15-3. Unlike an action for wrongful death, the survival action inheres in the estate and is therefore subject to devise and the claims of creditors. See, e.g., Soden v. Trenton, and Mercer Cty. Traction Co., 101 N.J.L. 393, 398, 127 A. 558 (E. & A.1925). The survival action merely "perpetuatfes] the right of action which the deceased himself would have had, to redress his own injuries, but for his death." 2 F. Harper & F. James, supra, § 24.2 at 1287. The wrongful death action, in contrast, includes two essential elements not present in any action brought by the decedent for his personal injuries. They are, first, death caused by the tortious act of the defendant and, second, the particular damages flowing therefrom to the next of kin. The existence of a separate statute of limitations for wrongful death claims, N.J.S.A. 2A:31-3, is further indication of the differing personal interests underlying the action. Id. at 107-08, 127 A. 558 (emphasis added).
WRONGFUL DEATH ACTION AND SURVIVAL ACTION CLAIMS AS SEPARATE CLAIMS, FOR PUPOSES OF "PER PERSON" OR "PER INJURY" SPLIT LIMITS LABILITY OR UM/UIM INSUANCE POLICY COVERAGES
As noted above, Prudential argues that a wrongful death action and a survival action cannot be considered as two separate claims, for purposes of determining the available coverages under its "per person", "per accident", split limits liability insurance and UIM policies. Selective, whose split limits UIM policy is also at issue in *614 this case, joins Prudential's arguments. These carriers recognize, as they must, that both wrongful death action claims and survival action claims are contemplated and may be brought under the provisions of all UM/UIM policies issued in New Jersey. Corcione v. Keystone Ins. Co., 297 N.J.Super. 571, 688 A.2d 683 (Law Div. 1996). The "bodily injury" definition under Selective's policy includes death. Those who are "insured" for UM/UIM benefits are: (1) the named insured, as well as his spouse or any other family member residing in the named insured's household; (2) any other person occupying the insured auto; and (3) any personsuch as the administrator of the "insured" decedent's estate, or the administrator ad prosequendum of the "insured" decedentfor damages that such persons are entitled to recover because of bodily injury or death sustained by the named insured, his resident spouse or family member, or any other person occupying the insured auto. Mr. Vassiliu was an "insured", under category (1), because he was a family member and resident of the named insured's household. The administrator of his estate was an "insured" under category (3), as the person representing Mr. Vassiliu's estate for the recovery of damages for his predeath injuries. So too was the administrator ad prosequendum an "insured" under category (3), as the person representing the dependent survivors who were entitled to recover pecuniary loss damages because of Mr. Vassiliu's death. The UIM policy provisions thus expressly contemplated two separate actions: (1) a survival action brought by his estate for damages for his pre-death injuries; and (2) a wrongful death action brought by the administrator ad prosequendum for the economic or pecuniary losses suffered by his dependent survivors. Selective further impliedly recognized that for purposes of "per person" limits, each of these actions constitute(s) a separate "per person" claim, when it specified in the "LIMIT OF [UM/ UIM] LIABILITY" section of its policy that:
No one is entitled to receive duplicate payment for the same element of loss. (emphasis added).
This provision reflects the principle enunciated in DeFelice v. Beall, 274 N.J.Super. 592, 644 A.2d 1136 (App.Div.1994) that dependent survivors do not have separate pecuniary loss claims for the death of their decedent, for their claims are subsumed in the wrongful death action claim, and therefore wouldif allowed, constitute duplicate payments for the same element of damagespecuniary loss. On the other hand, wrongful death actions and survival actions are separate claims, since they do not involve "the same element of loss", and payment of either claim would not "duplicate" payment of the other.
Similar provisions of the Prudential policy likewise include the same categories of "insureds" for purposes of UM/UIM coverage. Mr. Vassiliu was also an "insured" under that policy, because he was a family member residing in the same household as Prudential's named insured. As with Selective's policy, Prudential's UM/UIM policy provisions contemplate two separate actions being brought, a survival action and a wrongful death action.
Furthermore, irrespective of whether a wrongful death action or a survival action are permitted by the insurance policy, as a matter of law, each of those actions may be brought under UM/UIM policies. Corcione v. Keystone Ins. Co., supra. Rejecting the carrier's argument in Corcione that only survival actions were permissible under its policy, and not wrongful death actions, Judge Menza said:
It is to be noted that both the wrongful death statute and the underinsured motorist statute permit a wrongful death *615 action to be brought by a next of kin under an uninsured motorist provision of a policy, irrespective of whether such an action is permitted by the insurance contract, and even if the contract specifically prohibits it.
Since both of these statues are remedial in nature and express a public policy, any attempt to restrict such a wrongful death action is contrary to the purpose and intent of the statute, and, therefore, must be considered nugatory and of no effect. (See Pasterchick v. Insurance Co. of No. America, 150 N.J.Super. 90, 94, 374 A.2d 1243 (App. Div.1977)). Id. at 578, 688 A.2d 683.
Despite their acknowledgment that separate claims, one for wrongful death, and anothera survival action claimfor pre-death injuries to the decedent, may be brought under their UM/UIM policies, Prudential and Selective nonetheless contend that wrongful death and survival actions are derivative of each other, and should therefore be lumped together so as to form only one person or claim, for purposes of "per person" split limits insurance coverages. They rely on DeFelice v. Beall, supra, and Miller v. Estate of Sperling, 326 N.J.Super. 572, 742 A.2d 572 (App.Div.1999). Neither case supports their position.
DeFelice, was decided five years before Smith v. Whitaker, and did not address the distinctions between and separateness of wrongful death and survival action claims. Nor did it involve the issue of the split limits coverages available for wrongful death and survival actions that is presented here. Rather, DeFelice involved the wholly different question whether a decedent's dependent's right to share in the recovery of pecuniary loss under the Wrongful Death Act constitutes a separate and independent cause of action or claim. The court held that an individual dependent's claim of pecuniary loss by reason of the decedent's death is not a separate claimincluding for purposes of liability insurance limits. A dependent in a wrongful death action does not have an independent cause of action, because it would be duplicative of the same element of damagesthe pecuniary losses of all the dependent survivorsthat is involved in the wrongful death action. Id. at 598, 644 A.2d 1136. Rather, each dependent's claim of pecuniary loss flowing from the death of the decedent is "subsumed" in a single action under the Wrongful Death Act, and is a "component [ ] of a single pecuniary loss claim. [Thus] [t]he [wrongful death] claim of the administrator ad prosequendum or the executor is subject to the per person limit of the policy." Id. If a particular dependent brought an emotional distress claim caused by the trauma of watching the decedent suffer or die, or by watching unsuccessful efforts to revive the decedent, that would be a separate claim, and the per-accident limit rather than the per-injury limit would apply. Id. at 598-99, 644 A.2d 1136, citing Wolfe v. State Farm Ins. Co., 224 N.J.Super. 348, 351-52, 354, 540 A.2d 871 (App. Div.), cert. denied, 111 N.J. 654, 546 A.2d 562 (1988).
The distinction addressed in DeFelice and Wolfe between those claims that involve separate, different and distinct types and elements of damages under different causes of actions, and those involving individual components of damages that are subsumed in a single cause of action, is essential. Wrongful death and survival actions fit into the former category, for each involves separate, different and distinct types or elements of damages under different causes of action. Further, not only are they separate causes of action, with differing types and elements of damages for different parties, but the recovery of damages in one is not dependent on the recovery *616 of damages in the other. Unlike a per quod claim, which is dependent upon the recovery by an injured spouse in a personal injury action, a recovery of damages in a wrongful death action is not dependent on a recovery in a survival action. Quite simply, each involves different elements of damages incurred by different persons the pecuniary losses to dependent survivors in a wrongful death action, versus the decedent's own damages or losses incurred by him prior to death.
Miller v. Estate of Sperling is not supportive of Prudential's and Selective's position either. There, the court held that if a person does not bring a personal injury action against a tortfeasor within the applicable limitations period, then an action for the wrongful death of such person, arising from the same tortious conduct of that tortfeasor, is barred as well. The court relied on Knabe v. Hudson Bus Transportation Co., supra, despite that 1933 decision of the former Court of Errors & Appeals having twice been criticized by the Supreme Court, in both Lawlor v. Cloverleaf Memorial Park, Inc., 56 N.J. 326, 266 A.2d 569 (1970), and Alfone v. Sarno, supra. The Supreme Court in Lawlor, and again in Alfone, called into question the Knabe court's characterization of a wrongful death action as being wholly derivative from the decedent's claims for personal injuries. Alfone, 87 N.J. at 103, 432 A.2d 857; Lawlor, 56 N.J. at 343-45, 266 A.2d 569. Miller also overlooked the conflicting decision of the Appellate Division in Kotkin v. Caprio, 65 N.J.Super. 453, 168 A.2d 69, cert. denied, 34 N.J. 470, 169 A.2d 745 (1961). The panel in Kotkin held that the failure of a person or her estate to bring a personal injury or survival action against a tortfeasor within two years of the accident that caused her injuries and eventually her death, did not operate to bar the wrongful death action that was filed by the administrator ad prosequendum more than 2 years post-accident, but within 2 years of her death. Id. at 457, 168 A.2d 69. Holding that survival actions and wrongful death actions are separate causes of action, the court in Kotkin said:
Under our statutes, when the injured person dies as a result of the accident while he still has a cause of action for his injuries, the cause of action for his injuries passes to his estate, while a new and separate cause of action, with its own statute of limitations, arises in favor of the beneficiaries named in the Death Act. Soden v. Trenton, etc., Traction Corp., supra; Turon v. J. & L. Construction Co., supra. See also Prudential Insurance Co. v. Laval, 131 N.J.Eq. 23, 23 A.2d 908 (Ch.1942). Consequently, the action on account of Mrs. Dilk's death is not barred. Id. at 458, 168 A.2d 69(emphasis added).
The panel, which included Judge later Justice Sullivan, further noted that because a survival action and a wrongful death action are two separate claims, they should not be "lumped" together in a single count. Id. at 456, 168 A.2d 69.
Kotkin was later cited with approval by the Supreme Court in Giardina v. Bennett, 111 N.J. 412, 545 A.2d 139 (1988). There, Justice Handler wrote:
... Unlike the cause of action for injuries of a decedent, which passed to the decedent's estate, this [the wrongful death action] was a "new and separate cause of action" arising in favor of the beneficiaries named under the Act. See Kotkin v. Caprio, 65 N.J.Super. 453, 168 A.2d 69 (App.Div.) certif. denied, 34 N.J. 470, 169 A.2d 745 (1961). As observed in Alfone v. Sarno, 87 N.J. 99, 104, 432 A.2d 8570(1981), "the right to recover for wrongful death derives directly from the tortious act or omission of the defendant against the decedent." It thus in *617 essence remains a derivative action based on the harm done to the decedent, and is thus differentiated from personal injury actions brought by the decedent prior to death, or by survivors resulting from injuries they directly suffered due to the wrongful death. Id. at 423-24, 545 A.2d 139.
Thus, the observation in Miller, 326 N.J.Super. at 581, 742 A.2d 572, that under the 1933 Knabe decision, wrongful death actions are wholly derivative from an underlying personal injury action, is not only at odds with Kotkin, but it is in conflict the contrary expressions of the Supreme Court in Lawlor; Alfone and Giardina. Equally important, Miller failed to cite the Supreme Court's opinion several months earlier in Smith v. Whitaker, in which the Supreme Court pronounced that wrongful death actions and survival actions are two separate and distinct causes of action and claims, since: (a) they serve different purposes and are designed to provide a remedy to different parties; (b) they are distinct causes of action authorized by different statutes;(c) they provide different types and elements of damages to different partiespecuniary loss/compensatory damages to decedent's dependent survivors in the wrongful death action, versus compensatory and punitive damages to the decedent's estate for predeath injuries to the decedent; and (d) wrongful death actions and survival actions are unlike, the former being a derivative action arising in favor of beneficiaries under the Wrongful Death Act, and the latter preserving to the decedent's estate under the Survivor's Act any personal cause of action the decedent would have had if he had survived. Id. at 231-34, 236-37, 734 A.2d 243. Nor did Miller involve or address the issue at hand, i.e., whether "per person" liability or UIM insurance policy limits apply separately to wrongful death action and survival action claims.
Selective also relies on a Pennsylvania case, Erie Insurance Group v. Shue, 1999 Pa.Super. 283, 741 A.2d 803 (1999), to support its argument that wrongful death action and survival action claims must be lumped together as one "person" or claim, for purposes of a "per person" split limits policy. That argument must be rejected, because the Erie Insurance case involved claims brought under Pennsylvania's wrongful death and survival act statutes. Those statutes are so materially different from New Jersey's wrongful death and survival action statues that the Erie Insurance case has no precedential value here at all. The chief difference is that under Pennsylvania law, wrongful death and survival action damages overlap and are duplicative, so much so that each involves the same element of damagesthe loss of lifetime wages or earnings of the decedent that he would have generated throughout the rest of his working life, but for his death. In the survival action, the measure of damages includes the present value of the loss of the decedent's lifetime wages or earnings, less his probable maintenance expenditures had he lived. The same element is involved in the measure of damages in the wrongful death casethe amounts from the decedent's lifetime wages or earnings that he would have contributed to his dependent survivors. The measure of damages is so duplicative that "any amounts [awarded in the wrongful death action] must be subtracted from the survival action recovery to avoid duplication of damages". Huda, v. Kirk, 122 Pa.Cmwlth. 129, 551 A.2d 637, 638-39 (1988), citing Ferne v. Chadderton, 363 Pa. 191, 69 A.2d 104 (1949) (emphasis added). The court in Huda explained that:
The two actions [the action for wrongful death and the survival action] most often overlap when lost earnings and earning *618 power are involved. In a survival action, the estate is entitled to recover "the loss of earning power less personal maintenance expenses from the time of decedent's death through decedent's estimated working lifespan." (citation omitted). Any amounts the decedent would have contributed to the spouse and children for their support are recoverable under the wrongful death action; any amounts so awarded, however, must be subtracted from the survival action recovery to avoid duplication of damages. Id. (emphasis added).
See also, Slavin v. Gardner, 274 Pa.Super. 192, 418 A.2d 361 (1979); Prince v. Adams, 229 Pa.Super. 150, 324 A.2d 358 (1974).
In sharp contrast, under New Jersey law, that element of damages consisting of the decedent's lifetime earnings had he lived is utilized only in the wrongful death action, not in the survival action. The latter includes only those earnings the decedent lost prior to death. The former includes only those earnings of the decedent that he would have generated after his death, had he lived and not met an untimely death. An example of the vast difference between Pennsylvania and New Jersey law is that under the Pennsylvania Survival Act, the amount of damages for the loss of a child, which are measured by the child's lifetime earnings had he not died, generally will substantially exceed the amount of damages for the death of a child under New Jersey law.
Thus, the Erie Insurance case is inapposite. Under Pennsylvania law, wrongful death and survival actions are not separate and distinct, for they involve the same element of damagesthe loss of the decedent's lifetime earningsand are therefore duplicative, so much so that the amount of any wrongful death award must be deducted from the survival action ward, in order to avoid a duplication of damages. By contrast wrongful death action and survival action claims in New Jersey are distinctly separate, and involve no duplication or overlap of damages.
WRONGFUL DEATH ACTION AND SURVIVAL ACTION CLAIMS AS SEPARATE "PER PERSON" OR "PER INJURY" CLAIMS, FOR PURPOSES OF SPLIT LIMITS LABILITY AND UM/UIM INSUANCE POLICY COVERAGES
In view of the separate rights and remedies created by N.J.S.A. 2A:31- to -6 and N.J.S.A. 2A:15-3, and given the clear pronouncements of the Supreme Court in Smith, Giardina and Alfone that wrongful death actions and survival actions are two separate and distinct causes of actions and claims, each "serv[ing] different purposes and [each] designed to provide a remedy to different parties", Smith, 160 N.J. at 231, 734 A.2d 243 (emphasis added), and each providing damages that are wholly different and distinct from those recoverable in the other, and to different parties than the other; it must be concluded that wrongful death action and survival action claims are separate, "per person" or "per injury" claims under split limits liability and UM/ UIM insurance policies. Thus, the argument of Prudential and Selective that even though wrongful death and survival action claims are indeed two separate actions, they should still be "lumped" together or "shoehorned" into one "per person" limit, is pretzel logic and must be rejected. A wrongful death action claim and a survival action claim are so different that they should no more be "lumped" together into one "per person" liability or UM/UIM coverage limit, than be "lumped" together in a single count of a complaint. Kotkin v. Caprio, 65 N.J.Super. at 456, 168 A.2d 69.
*619 Accordingly, in this case, Prudential owes the full $30,000 limits of its liability policy: $15,000 towards the wrongful death action award, and $15,000 towards the survival action award. And Prudential and Selective owe a net total of $135,000 from their UIM policies ($200,000-$65,000) from the liability policies of New Hampshire and Prudential: $67,500 towards the wrongful death action award, and $67,500 towards the survival action award.
Finally, Prudential's and Selective's argument that no UIM benefits are payable because plaintiffs settled with Daimler Chrysler for an amount exceeding the $100,000/$300,000 UIM policy limits, is without merit. While N.J.S.A. 17:28-1.1(e)(1) authorizes a reduction or set-off of the limits of UIM coverage by the amounts "recovered under all bodily injury liability insurance or bonds," it is also axiomatic that:
An insurer is bound by the terms of its contract despite the fact that the coverage thereby provided was more extensive than required by the statute. Williams v. American Home Assur. Co., 121 N.J.Super. 351, 356, 297 A.2d 193 (App.Div.1972) certif. den. 62 N.J. 260, 300 A.2d 344 (1973). See also State Farm v. Zurich Am. Inc. Co., 62 N.J. 155, 170, 299 A.2d 704 (1973); Colangelo v. Bankers & Shippers Ins. Co. of NewYork, 185 N.J.Super. 205, 209, 447 A.2d 1356 (Law Div.1982). The trial judge properly noted in ruling in plaintiffs favor that
[h]ere the carrier sold to the deceased a policy of insurance which provided and spelled out benefits more liberal than that which is now contained or was then contained in the amended statute. It very well may be that the carrier had neglected to amend its policy to conform to the statute or to attach to it a rider indicating that the language is superseded by the language of the statute, and it charged a premium for the option that it sold. The carrier should not now be heard to complain of its liberality or its neglect which resulted in liberality on the basis that it would be contrary to public policy and the intent of the legislature to limit the exposure of the carriers under the no fault law.
Capelli v. Twin City Fire Ins. Co., 209 N.J.Super. 552, 508 A.2d 269 (App.Div. 1986). In Capelli, an amendment to N.J.S.A. 39:6A-10 provided that income continuation and essential services benefits under the No-Fault Act "shall cease upon the death of the claimant, and shall not operate to increase the amount of any death benefits payable under Section 4...". However, the no-fault insurance carrier did not revise the provisions of the policy it issued to plaintiffs decedent to reflect the above limitations or restrictions of the statutory amendment. The court held that the carrier was bound by the terms of its insurance policy contract to pay the maximum income and essential services benefits specified in the policy, and thus could not limit recovery of those benefits to the lifetime of plaintiff's decedent, even though the coverage provided by its insurance policy was more extensive than that required by the amendment to N.J.S.A. 39:6A-10.
Here, coverage under the UIM provisions of both the Prudential and Selective policies is broader and more extensive than required by N.J.S.A. 17:28-1.1(e)(1). The provisions of Selective's policy specify that the limit of its liability for UIM benefits shall be reduced only by all sums "[p]aid... by or on behalf of persons or organizations who may be legally responsible." The provisions of Prudential's policy similarly specify that the limit of its liability *620 for UIM benefits will be reduced only by those amounts recovered from persons "responsible for the accident". These provisions clearly and unambiguously limit the reduction or offset of UIM liability limits by Prudential and Selective to only those amounts paid by or recovered from those persons who were legally responsible for the accident that caused injuries to and claimed the life of Mr. Vassiliu, i.e., a tortfeasor whose liability has been adjudicated or who has admitted responsibility for the accident and injuries. While these provisions of the Selective and Prudential insurance contracts provide UIM coverage that is broader and more extensive than required by the statute, N.J.S.A. 17:28-1.1(e)(1), these carriers are bound by the terms of their contracts. Capelli v. Twin City Fire Ins. Co., supra; see also, Kilgannon v. Allstate Ins. Co., 240 N.J.Super. 4, 7 n. 1, 572 A.2d 201 (App.Div.1990) (an insurer is bound by the terms of the insurance contract if the coverage provided is more extensive than that required by statute).
Construing a similar UIM limit of liability provision in Bauter v. Hanover Ins. Co., 247 N.J.Super. 94, 588 A.2d 870 (App.Div. 1991), the court recognized that fulfillment of the language of the provision, which provided more extensive coverage than that required by N.J.S.A. 17:28-1.1(e)(1), was a condition that must be met in order for the UIM carrier to receive a reduction or setoff of the amounts paid by others to the plaintiff. Id. at 101, 588 A.2d 870. In Banter, plaintiff's wife was killed in a vehicular accident while a passenger in plaintiffs car. Beside settling the claim against the intoxicated driver of the other car, plaintiff settled a dram shop action against Ralph's Tavern & Liquors, the tavern that served the intoxicated driver, for the full limits of its dram shop liability policy. The court found that the UIM carrier was entitled to a reduction from its limit of UIM liability by the amount paid by the tavern's dram shop carrier, since the tavern admitted liability, and was thus a person legally responsible for the accident and the injuries sustained. The court stated in Bauter:
Finally, we note the following condition in plaintiffs automobile insurance policy issued by defendant:
With respect to an accident with an underinsured motor vehicle, the limit of liability shall be reduced by all sums:
1. Paid because of the bodily injury or property damage by or on behalf of persons or organizations who may be legally responsible.
Ralph's Tavern and Liquors has admitted responsibility for the injures sustained and thus is a party legally responsible. The language of the condition is clear and unambiguous and permits Hanover to offset the amount received under the dram shop policy. Id. at 101, 588 A.2d 870 (citations omitted) (emphasis added).
While Prudential and Selective cite Prudential Prop. & Cas. v. Kress, 241 N.J.Super. 81, 574 A.2d 482 (App.Div.1990); Gold v. Aetna Life & Cas. Ins. Co., 233 N.J.Super. 271, 558 A.2d 854 (App.Div.1989); and Nikiper v. Motor Club of America Cos., 232 N.J.Super. 393, 557 A.2d 332 (App. Div.), certif. den. 117 N.J. 139, 564 A.2d 863 (1989), those cases are inapposite. None involved the application of a UIM policy containing a provision for reduction of UIM liability limits that provided more favorable and more extensive coverage than required by the statute, N.J.S.A. 17:28-1.1(e)(1), as do the provisions in Prudential's and Selective's UIM policies do in this case, and as in Bauter, supra.
Since by the terms of their UIM contracts, Prudential and Selective restricted *621 the reduction of their UIM liability limits to only those sums paid by those persons responsible for the accident, and thereby provided UIM coverage limits "more extensive than required by the statute," N.J.S.A. 17:28-1.1(e)(1), they are bound by the terms of those contracts. Capelli v. Twin City Fire Ins. Co., supra. As in Banter, which they both cite, Prudential and Selective would have to show that DaimlerChrysler or Mt. Ephraim Dodge was "responsible" for the accident and Mr. Vassiliu's injuries and death, i.e., that DaimlerChrysler or Mt. Ephraim Dodge either "admitted responsibility", as the tavern did in Bauter; or that either of them was adjudicated responsible.
In this case, neither Daimler Chrysler nor Mt. Ephraim Dodge ever admitted responsibility for the accident of Mr. Vassiliu's injuries or death. Nor was either of them ever adjudicated liable as a responsible tortfeasor, or in any degree at fault for the accident or the injuries that claimed Mr. Vassiliu's life. Further, it's too late for Prudential and Selective to now assert otherwise, for in declining to intervene in this action and participate in the trial, where they would have had the opportunity to present evidence to support an adjudication of fault on Daimler Chrysler's or Mt. Ephraim Dodge's part, they waived that right and are estopped from now asserting that DaimlerChrysler or Mt. Ephraim Dodge was legally responsible. Zirger v. General Acc. Ins. Co., supra.
CONCLUSION
For the foregoing reasons, Prudential shall pay the full $30,000 limits of its liability policy towards the wrongful death action and survival action awards. Also, Prudential and Selective shall each pay $67,500 from their respective UIM policies towards the wrongful death action and survival action awards.
SO ORDERED.
NOTES
[1] The limits of multiple available UIM policies are not stacked. Instead, any recovery is prorated between the applicable UIM policies in the same protion as the limits of each bears to the total of the limits of all available UIM policies. N.J.S.A. 17:28-1.1c.