791 A.2d 1044 (2002)
348 N.J. Super. 204
Natalie GAMBINO, Executrix of the Estate of Carol Gambino, and Jerry Varrone, Guardian Ad Litem of Thomas Gambino, Jr., and Anthony Gambino, Plaintiffs-Appellants,
v.
STATE FARM INSURANCE CO., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued January 24, 2002.
Decided February 27, 2002.
*1045 John F. Marshall, argued the cause for appellants.
John A. Camassa, Manasquan, argued the cause for respondent (Connell & Connell, attorneys; Mr. Camassa, of counsel; Ronald S. Yuro, on the brief).
Before Judges CUFF,[1] WECKER and WINKELSTEIN.
The opinion of the court was delivered by WINKELSTEIN, J.A.D.
On June 7, 1998, Thomas Gambino, Sr., was operating his automobile when it struck a tree. In the vehicle at the time of the accident were his wife, Carol Gambino, their two sons, Thomas, Jr. and Anthony, and an unrelated minor passenger. Carol Gambino was killed, and their two sons and the unrelated minor passenger were injured.
Thomas Gambino's vehicle was insured by State Farm Insurance Company (State Farm) under policy # B073553-E18-30, which provided split limit liability coverage in the amount of $100,000 per person, and $300,000 per accident. By way of settlement, State Farm paid $100,000 to the Estate of Carol Gambino (the Estate), $50,000 each on behalf of Thomas, Jr. and Anthony, and $100,000 to the unrelated passenger, exhausting the total liability limits. Thomas Gambino had a second State Farm policy in effect, # Y43-5107-E17-30,[2] which provided split limit underinsured motorist (UIM) benefits of $250,000 per person and $500,000 per accident.
In this appeal we are asked to decide whether defendant should receive a $200,000 aggregate credit against the $500,000 UIM per accident UIM limit, leaving only $300,000 available to satisfy all of plaintiffs' claims, or whether the credit is computed by separately deducting the amount of liability insurance proceeds received by each injured party from the $250,000 UIM per person limitation.[3] The *1046 latter method would leave the Estate with $150,000 in available UIM coverage ($250,-000 less $100,000 received under the liability policy) and each child with $200,000 available UIM coverage ($250,000 less $50,000 received under the liability policy). Although this calculation would make the aggregate UIM recovery $550,000, plaintiffs concede that their aggregate recovery is capped at $500,000. The Law Division applied an aggregate credit of $200,000 against the $500,000 per accident policy limit. We conclude that N.J.S.A. 17:28-1.1e, which defines underinsured automobile insurance coverage, and case law which has interpreted the statute, require a different result. Under the statute, when, as here, there are multiple claimants who have exhausted the tortfeasor's liability insurance, and UIM coverage is available through a split limit policy, the appropriate credit is determined by applying each injured party's recovery of liability insurance against that party's per person UIM coverage, subject only to the total per accident UIM cap set forth in the policy. Accordingly, we reverse.

I
Plaintiffs demanded arbitration under the UIM policy. State Farm refused to arbitrate until a declaratory ruling was obtained determining the amount of UIM benefits at stake. As a result, on March 24, 2000, plaintiffs filed a complaint and order to show cause seeking to compel State Farm to arbitrate the UIM claims and to provide UIM coverage of $250,000 per person, with a cap of $500,000 for the accident. On the return day of the order to show cause, May 26, 2000, the Law Division heard oral argument. No testimony was taken since the question presented was purely a matter of law. On November 22, 2000, the judge placed an oral decision on the record and issued a written decision. Considering the issue as one of first impression, the court phrased the question as "whether claimants may recover $500,000 from a split limit UIM policy when they've already received settlement monies from the tortfeasor's liability policy for a total of $200,000." The judge found in favor of State Farm. The court, after reading various provisions of the insurance policy into the record, concluded that the "language of the policy is clear that State Farm is obligated to pay the [$]500,000 per accident and is not obligated to pay more than that aggregate sum to satisfy claims arising from a single accident regardless of the number of claimants." Given this conclusion, the judge decided "to subtract the $200,000 previously recovered from the $500,000 per accident limit under the UIM policy, leaving $300,000. Then the parties can either divide evenly the $300,000 or can seek arbitration if State Farm is not willing to pay the total amount of the remaining UIM policy."

II
The purpose of UIM coverage "is to provide as much coverage as an insured is willing to purchase, up to the available limits, against the risk of an underinsured claim." Nikiper v. Motor Club of America Cos., 232 N.J.Super. 393, 399, 557 A.2d 332 (App.Div.), certif. denied, 117 N.J. 139, 564 A.2d 863 (1989). A UIM provision allows an insured to receive "benefits up to the amount contracted for, whether these come from the tortfeasor's policy or from that policy coupled with his own." Clegg v. New Jersey Auto. Full Underwriting Assoc., 254 N.J.Super. 634, 638, 604 A.2d 179 (App.Div.1992) (citation omitted). The principle behind UIM coverage was recently described by Judge Shebell in Calabrese v. Selective Ins. Co., 297 N.J.Super. 423, 431, 688 A.2d 606 (App.Div.1997), overruled on other grounds, Magnifico v. Rutgers Cas. Ins. Co., 153 N.J. 406, 710 A.2d 412 (1998), as follows:

*1047 The principle of UIM coverage is not to make the injured party whole, but to put that person in as good a position as if the tortfeasor possessed an amount of liability insurance equal to the UIM coverage of an `insured' under the policy in question.

[citations omitted.]
As Judge Pressler explained in Longworth v. Van Houten, 223 N.J.Super. 174, 177-78, 538 A.2d 414 (App.Div.1988):
The effect of the coverage is to require the insurer, as a matter of contractual agreement, to pay its insured, to the extent of the coverage purchased, the liability damages which the insured is entitled to from the negligent uninsured or underinsured tortfeasor less, in the case of the underinsured tortfeasor, the amount of the tortfeasor's coverage.... If an underinsured tortfeasor is involved, however, his victim may not pursue his contractual UIM right against his own liability insurer until he has first recovered the tortfeasor's liability by settlement or judgment. That recovery is then offset against the maximum UIM coverage provided for by the policy. Thus, the UIM, but not the UM, coverage has essential attributes of excess rather than primary protection.

III
Our decision is guided by an interpretation of N.J.S.A. 17:28-1.1e, which reads:
e. For the purpose of this section, (1) `underinsured motorist coverage' means insurance for damages because of bodily injury and property damage resulting from an accident arising out of the ownership, maintenance, operation or use of an underinsured motor vehicle.... A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery. A motor vehicle shall not be considered an underinsured motor vehicle under this section unless the limits of all bodily injury liability insurance or bonds applicable at the time of the accident have been exhausted by payment of settlements or judgments. The limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he has recovered under all bodily injury liability insurance or bonds;

[emphasis added.]
Although we have not before been presented with an opportunity to interpret the last sentence of N.J.S.A. 17:28-1.1e where the UIM coverage is split limits, in Calabrese we addressed the issue of credits available to reduce UIM coverage where the tortfeasor had a split limit policy, while the insured's UIM coverage was single limit. 297 N.J.Super. at 432, 688 A.2d 606. In Calabrese, four passengers sustained serious injuries in a two-car collision. The tortfeasor possessed a $100,000/$300,000 policy which was paid out in increments of $75,000 to each of the four claimants, exhausting the policy limits of $300,000. The driver of the vehicle, who was not the owner, sought UIM benefits under her own policy issued by Selective Insurance Company (Selective). The two passengers sought UIM benefits under the owner's policy, also issued by Selective. Each Selective policy carried combined single limit uninsured/underinsured motorist coverage of $300,000. Each injured party's arbitration award exceeded the $75,000 paid under the tortfeasor's policy. To determine the amount of UIM coverage available to pay the arbitration awards, each claimant's *1048 UIM coverage was reduced by the $75,000 each received from the tortfeasor, not by the total $300,000 paid to all of the claimants. Id. at 434-35, 688 A.2d 606.
We are also guided by Filippatos v. Selective Ins. Co. of America, 241 N.J.Super. 236, 574 A.2d 1002 (App.Div.1990). In Filippatos, plaintiff was one of two passengers injured in a one-car accident; the other passenger later died of his injuries. The driver had single limit liability policy coverage of $300,000, and the carrier exhausted the policy limits by paying $150,000 each to the plaintiff and to the estate of the other passenger. Plaintiff's single UIM limits were $500,000. The UIM arbitrator fixed plaintiff's damages at $375,000. The insurer argued that only the $75,000 that exceeded the tortfeasor's $300,000 limits should be recoverable; plaintiff argued that he was entitled to the full $225,000 in unrecovered damagesthe difference between the arbitrators' $375,000 damage award and the $150,000 plaintiff received from the tortfeasor's coverage. 241 N.J.Super. at 238, 574 A.2d 1002. In determining there was $350,000 of UIM coverage available, we reduced the $500,000 UIM policy limit by deducting only the $150,000 the plaintiff had received from the tortfeasor. This left sufficient coverage to pay the plaintiff the $225,000 unrecovered damages. We did not reduce the available coverage by the $150,000 paid to the other injured party. Ibid.
In Filippatos, therefore, it was the amount recovered from the tortfeasor by the UIM claimant that dictated the credit against that claimant's UIM coverage. Accord French v. New Jersey School Bd. Ass'n. Ins. Group, 149 N.J. 478, 484, 694 A.2d 1008 (1997) (holding that where "multiple claimants exhaust all of the liability limits available to an underinsured tortfeasor and when a claimant `holds' a UIM policy that creates coverage when compared with the underinsured tortfeasor's total liability limits, the amount that the injured claimant is able to recover from the liability policy (as opposed to the liability policy limit itself) serves as the appropriate setoff) (citing Filippatos, 241 N.J.Super. at 237, 574 A.2d 1002).
We turn now to the application of these principles to this case. The UIM coverage limits are $250,000 for each person injured in the accident, as long as the total amount paid out by State Farm in UIM benefits does not exceed $500,000. Therefore, after deducting each plaintiff's recovery under the tortfeasor's policy, the available UIM coverage is as follows: (a) the Estate$150,000 ($100,000 credit against $250,000 coverage); (b) Thomas, Jr.$200,000 ($50,000 credit against $250,000 coverage); (c) Anthony$200,000 ($50,000 credit against $250,000 coverage); for a total of $550,000. Since the total exceeds the $500,000 per accident coverage, it will have to be reduced by $50,000, capping the available coverage to all parties at the $500,000 policy limits.
By following this formula the principles and goals of UIM coverage and the reasonable expectations of the parties will be satisfied. The requirement in N.J.S.A. 17:28-1.1e that the limits of UIM coverage available to an injured person be reduced by the amount recovered under other bodily injury liability insurance is accomplished because the appropriate credit for each party's recovery under the liability policy will be taken against the $250,000 per person limit for each injured party. Furthermore, the plaintiffs will receive, by way of UIM coverage, the amount of coverage they would have received had the tortfeasor's liability limits equaled the UIM limits. See Calabrese, 297 N.J.Super. at 431, 688 A.2d 606. State Farm will not be required to pay more than the $500,000 total per accident limit, while the insureds will receive the *1049 total benefit of the $250,000 per person UIM coverage for which they bargained. In other words, each party will have its reasonable expectations satisfied. See Werner Indus., Inc. v. First State Ins. Co., 112 N.J. 30, 35, 548 A.2d 188 (1988).
State Farm's position that the $200,000 aggregate recovery should be subtracted from the $500,000 per accident limits would not provide insureds with the coverage they purchased. Under State Farm's theory, the UIM per accident limit would never be recoverable by the insureds, since reducing the per accident UIM limit by the aggregate recoveries of the insureds will always reduce the per accident coverage to below that amount which was purchased. The insurer will never be required to pay the total coverage per accident purchased by the insured because that sum would be reduced by the amount paid by the tortfeasor.

IV
In its written opinion the Law Division stated:
To find for the plaintiffs would mean that carriers are not permitted to cap their damages to a per accident amount. It would make the $500,000 per accident meaningless. Moreover, having reproduced the relevant portions of the insurance policy, it would fly in the face of the agreement entered into between the parties.
The judge misconstrued the language of the policy as well as plaintiffs' claim. The policy[4] reads in part as follows:
SECTION IIIUNINSURED AND UNDERINSURED MOTORISTCOVERAGE U
Limits of Liability 1. Bodily Injury
The amount of coverage is shown on the declarations page [$250,000/$500,000] under "Limits of LiabilityUEach Person, Each Accident." Under "Each Person" is the amount of coverage for all damages due to bodily injury to one person. "Bodily injury to one person" includes all injuries and damages to others resulting from this bodily injury. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to bodily injury to two or more persons in the same accident.
We agree with the trial court that the policy does not contain language which would warrant the insurance carrier to pay more than $500,000 under its UIM coverage. But that is not the issue. Plaintiffs acknowledge a UIM coverage limit of $500,000. Plaintiffs are merely asking for the coverage for which they paid $250,000 for each claimant. Under the motion judge's reasoning, focusing solely on the $500,000 policy cap, the $250,000 coverage for each claimant becomes a nullity.

IV
The decision of the Law Division is reversed and remanded for further proceedings consistent with our opinion.
Reversed and remanded.
NOTES
[1] Judge Cuff did not participate in oral argument. However, the parties consented at oral argument to her participation in the decision.
[2] At oral argument neither party was able to explain why there were two separate policies, one for liability and one for UIM coverage. That liability coverage and UIM coverage are provided in two separate policies, rather than in one, however, does not affect our decision.
[3] The $200,000 represents the $100,000 paid to the Estate plus the $50,000 paid to each child. Defendant does not claim a credit for the $100,000 paid to the unrelated passenger.
[4] Only one policy is included in the record and it is not identified as the liability policy or the UIM policy. The policy provided includes, however, sections for both liability and UIM coverage. Our decision assumes the policy language provided in the appendix accurately reflects the UIM policy language.