813 A.2d 547 (2002)
356 N.J. Super. 447
Christine R. VASSILIU, as General Administratrix and as Administratrix Ad Prosequendum of the Estate of Hristos Vassiliu, Plaintiff-Respondent,
v.
DAIMLER CHRYSLER CORP., Mt. Ephraim Dodge, Inc., Foulke Management Corp., and Shaun L. O'Brien, Defendants.
Christine R. Vassiliu, as General Administratrix and as Administratrix Ad Prosequendum of the Estate of Hristos Vassiliu, Plaintiff-Respondent,
v.
Prudential Property & Casualty Ins. Co., Selective Ins. Co., and Parkway Ins. Co., Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued October 23, 2002.
Decided November 6, 2002.
*548 Stephen G. Sobocinski, Marlton, argued the cause for appellant Selective Insurance Company (Tucker and Munyon, attorneys; Mr. Sobocinski, of counsel and on the brief).
Daniel J. Pomeroy, Springfield, argued the cause for appellant Prudential Property & Casualty Insurance Company (Mortenson and Pomeroy; attorneys; Mr. Pomeroy and Karen E. Heller, on the brief).
Louis J. DeVoto, Cherry Hill, argued the cause for respondent Christine R. Vassiliu as General Administratrix and as Administratrix Ad Prosequendum (Ferrara, Rossetti & DeVoto, attorneys; Mr. DeVoto and Jennifer A. Deiter, on the brief).
Kevin Haverty, Haddonfield, argued the cause for amicus curiae The Association of *549 Trial Lawyers of America-New Jersey (Williams, Cuker and Berezofsky, attorneys, Cherry Hill; Mr. Haverty, on the brief).
Before Judges CONLEY, NEWMAN and CARCHMAN.
The opinion of the court was delivered by CONLEY, J.A.D.
This appeal arises from a personal injury automobile complaint, brought by plaintiff Christine R. Vassiliu both as General Administratrix of Hristos Vassiliu's estate and as Administratrix Ad Prosequendum for decedent's heirs, which, after settlement with a products liability defendant, proceeded to a bench trial adjudication of 100% liability on the part of the defendant tortfeasor driver with a total damages and prejudgment interest award of $2,182,121.79, and from plaintiffs subsequent, consolidated, underinsured motorist (UIM) insurance complaint which resulted in a December 18, 2000, order. In part, that order, the subject of this appeal, required appellant Prudential Property & Casualty Insurance Company (Prudential) to pay an additional $15,000 "representing the balance of the full limits of its [split] liability insurance policy" and requiring Prudential and appellant Selective Insurance Company (Selective) each to pay $67,500 from their respective UIM policies. Prudential and Selective appeal from these provisions of the December 18, 2000, order. We affirm in part and reverse in part.
The pertinent facts and procedural history are as follows. On June 24, 1995, Hristos Vassiliu, operating a Plymouth Voyager van, was traveling south on Route 553 in Franklinville, New Jersey. His speed was approximately 50 m.p.h. He had the right of way through an intersection with Route 604, upon which Shaun O'Brien was traveling in her F150 Ford truck. The speed of the O'Brien vehicle, too, was approximately 50 m.p.h. O'Brien's lane of travel was controlled at the intersection by a stop sign and a blinking red light, both of which she failed to comply with. Her vehicle struck the Plymouth Voyager. Vassiliu died within minutes.
In June 1997, decedent's wife, as General Administratrix (for the estate) and as Administratrix Ad Prosequendum (for the heirs of the estate), filed a personal injury complaint, setting forth a survival action on behalf of the estate and a wrongful death action on behalf of decedent's heirs (plaintiff and her child) against O'Brien and the manufacturer and seller of decedent's vehicle. As to the latter claim, plaintiff asserts in her brief that it was premised upon the "crashworthiness" of the vehicle and that:
Although the case was rather clear from the outset against defendant O'Brien, it was extremely complicated and hotly contested against [the manufacturer]. The issues centered around whether [the decedent] was wearing his seatbelt, whether it failed to restrain him and whether it would have made a difference, in any event, to the survivability of this violent 50 mile per hour collision.
While plaintiffs counsel made every effort to successfully present a products liability claim against [the manufacturer], newly discovered evidence shortly before trial made the plaintiff's burden insurmountable. In fact, plaintiff could not have proceeded with any expert testimony against [the manufacturer] on design defect or proximate causation. Simply put, it became absolutely clear that [the decedent] was not wearing his seat belt at the time of the collision and it would not have mattered *550 in any event based on where [his] head struck the interior of the van.
Neither Prudential nor Selective have disputed these asserted weaknesses of plaintiff's liability claim against the manufacturer. However, we observe that the fact that decedent may not have been wearing his seatbelt does not ipso facto remove potential responsibility on the part of the manufacturer, although it would, indeed, make it more difficult to convince a jury of the manufacturer's contributory fault.
Defendant O'Brien was insured under two automobile liability policies. One was with New Hampshire Insurance Company for $35,000 and the other was a $15,000 per person/$30,000 per accident split limit policy with Prudential. The New Hampshire policy and $15,000 of the Prudential policy were deposited with the court. In addition, it is undisputed that the decedent had UIM coverage under two separate policies, one with Prudential and one with Selective. Both policies were split limit with $100,000 per person and $300,000 per accident. Although given notice of the litigation, neither Prudential nor Selective, as UIM carriers, intervened. However, Prudential was a liability carrier for O'Brien, though it contends its involvement in the trial was minimal.[1]
Following extensive discovery, a jury trial commenced. But after selection of a jury, the manufacturer settled for $215,000 without concession of liability on its part. Neither Prudential, as a UIM carrier, nor Selective were advised of the settlement offer prior to plaintiff's acceptance. Following this settlement, the matter proceeded without a jury. O'Brien, who had filed a bankruptcy petition,[2] presented no witnesses and the bulk of plaintiff's evidence concerned the alleged damages. The bench trial judge found that O'Brien was 100% liable. He found no evidence of fault on the part of the manufacturer and dismissed all cross-claims.
The damage award by the bench trial judge reflected a finding of $175,000 for the estate on the survival action and $1,758,516.32 for the decedent's heirs on the wrongful death action. At the time of the entry of the judgment, plaintiff had O'Brien's $35,000 from the New Hampshire liability policy and $15,000 from Prudential's liability policy plus the $215,000 received from the settlement.
As we have said, the Prudential liability policy was a split limit policy with $15,000 per person and $30,000 per accident coverage. In this respect, the pertinent policy provisions are as follows:
AmountBodily Injury: Each Person
The amount shown on the Declarations Page under "Bodily InjuryEach Person" is the limit of our liability under *551 this part for all damages, including damages for care or loss of services, arising out of bodily injury to one person as a result of any one accident.
AmountBodily Injury: Each Accident The amount shown on the Declarations Page under "Bodily InjuryEach Accident" is the limit of our liability under this part for all damages including [damages] for care or loss of services, arising out of bodily injury as a result of any one accident regardless of how many persons sustain bodily injury.
In her declaratory judgment action filed against Prudential and Selective the day after entry of the personal injury action judgment, and subsequently consolidated with the personal injury action, plaintiff sought an additional $15,000 from the Prudential liability policy, contending the estate's survival damages and the decedent's heirs' wrongful death damages each qualified for per person coverage. In addition, plaintiff also sought the $100,000 per person limit from the Prudential UIM policy and the $100,000 per person limit from the Selective UIM policy.
Prudential and Selective resisted plaintiffs claims for additional coverage. They disagreed that the per person coverage applied to the survival and wrongful death damages separately. In reliance upon N.J.S.A. 17:28-1.1e(1), they also contended that they were entitled to a pro tanto credit for the $215,000 received from the defendant manufacturer and that, therefore, no UIM coverage was available as the $215,000 exceeded the $100,000 UIM plaintiff sought from each carrier. Prudential and Selective also contended that because plaintiff did not give notice of her intention to settle with the manufacturer and, as a result, would not be litigating her claims against that defendant at the trial, they could not be bound by the judgment.
In an exceptionally thorough, well-analyzed thirty-five page written decision and a two-page written amplification pursuant to R. 2:5-1(b), Judge William J. Cook rejected these contentions. The result was that Prudential was required to pay the full $30,000 limits of its liability policy and Prudential and Selective each were required to pay $67,500 from their respective UIM policies.[3]
On appeal, Prudential contends:
POINT I THE TRIAL COURT'S DETERMINATION THAT THE WRONGFUL DEATH AND SUVIVAL ACTIONS ARE EACH SUJECT TO A SEPARATE "PER PERSON" LIMIT UNDER BOTH THE SPLIT LIMITS LIABILITY AND UNDERINSURED MOTOIST COVERAGE WAS INCORECT AND SHOULD BE RVERSED.
POINT II THE TRIAL COURT'S DETERMINATION THAT THE PROCEEDS OF PLAINTIFF'S SETTLEMENT WITH CHRYSLER SHOULD NOT BE SET OFF AGAINST THE UNDERINSURED MOTORIST BENEFITS OWED UNDER HER POLICIES WAS INCORRECT *552 AND SHOULD BE RVERSED.
A PRO TANTO SET-OFF OF SETLEMENT AMOUNTS PLAITIFF RECEIVED FROM CHRYLER WAS REQUIRED. PLAINTIFF'S UNDISCLOSED SETTLEMENT WITH CHRYSLER WAS A MATERIAL BREACH OF A POLICY CONDITION CAUSING PREJUDICE TO PRUDENTIAL.
In its separate consolidated appeal, Selective contends:
POINT I PURSUANT TO N.J.S.A. 17:28-1.1e(1) AND BAUTER, THE TRIAL COURT ERRED IN ORDERING THE PAYMENT OF UNDERINSURED MOTORIST BENEFITS AS THE PLAINTIFF RECEIVED IN ECESS OF THE UIM LIMITS FROM THE SETTLEMENT WITH CHRYSLER.
POINT II THE TRIAL COURT ERRED IN ORDERING SEPRATE POLICY LIMITS FOR THE WRONGFUL DEATH CLAIM AND THE SURVIVOR CLAIM IN THAT BOTH CLAIMS DERIVED FROM ONE INDIVIDUAL'S INJURY AND ARE THEREFORE ENTITLED TO A TOTAL OF ONE PER PERSON LIMIT.
POINT III THE PLAINTIFF FAILED TO PROVIDE THE PROER LONGWORTH NOTICE TO THE UIM CARRIERS AFTER RSOLVING HER CASE WITH CHRYSLER AT THE COMENCEMENT OF THE TRIAL AND THEREFORE PLAINTIFF IS PRECLUDED FROM A UIM RCOVERY.
POINT IV THE BENCH TRIAL WAS NOT A PROPER ADJUDICTION OF THE LIABILITY ISSUE AND SHOULD HAVE NO BINING EFFECT.
We have carefully considered the contentions raised by the parties in light of the record and applicable law. As to Prudential's point I and Selective's point II, we are entirely confident that Judge Cook's written analysis of the legal issues, applicable law, and pertinent facts and policy provisions is not only correct but in no need of reformulation. We affirm the application of separate per person coverage for the estate's survival damages and the decedent's heirs' wrongful death damages for the reasons set forth by Judge Cook in his December 18, 2000, written decision and his February 2, 2001, amplification. We add the following brief comments.
The heart of Judge Cook's reasoning was the conclusion, based upon our existing case law, that New Jersey's wrongful death act, N.J.S.A. 2A:31-1 to -6, and survival act, N.J.S.A. 2A:15-3, establish "two separate and distinct causes of actions and claims, each `serv[ing] different purposes and [each] designed to provide a remedy to different parties' ... and each providing damages that are wholly different and distinct from those recoverable in the other, and to different parties than the other...." See Smith v. Whitaker, 160 N.J. 221, 231, 734 A.2d 243 (1999). He, thus, concluded that each triggered a separate per person limit. We agree.
We reject Prudential and Selective's contention, presented during oral argument, that the result below runs counter to our statutory automobile insurance scheme. In this respect, counsel points to N.J.S.A. 39:6B-1 governing liability automobile insurance and which permits split limit policies. The issue here, of course, is not the existence of split limit policies, but what the per person limit is for. In that respect, N.J.S.A. 39:6B-1 provides in part *553 that liability insurance is for loss "resulting from liability imposed by law" for "bodily injury, death and property damage" sustained "by any person" arising out of automobile ownership, operation or use. It is in this context that the statute permits the per person limit "on account of injury to, or death of, one person, in any one accident." Here, the trial judge, as do we, viewed the estate and the decedent's heirs as, each, a separate "person" injured by the accident. We are convinced there is nothing in N.J.S.A. 39:6B-1, or the insurance policies with their comparative language, which precludes this result.
We are more troubled by Prudential and Selective's additional contention that they were entitled to a pro tanto credit for the $215,000 settlement from the defendant manufacturer. As the carriers properly point out, UIM is not intended to provide coverage to compensate injured parties for the full value of the injuries caused by the tortfeasors. The clear Legislative intent is that UIM should serve as a "gapfiller." Bauter v. Hanover Ins. Co., 247 N.J.Super. 94, 96, 588 A.2d 870 (App.Div.), certif. denied, 126 N.J. 335, 598 A.2d 893 (1991). "The principle of UIM coverage is not to make the injured party whole, but to put that person in as good a position as if the tortfeasor possessed an amount of liability insurance equal to the UIM coverage of an `insured' under the policy in question." Calabrese v. Selective Ins. Co., 297 N.J.Super. 423, 431, 688 A.2d 606 (App.Div.1997), overruled on other grounds, Magnifico v. Rutgers Cas. Ins. Co., 153 N.J. 406, 416, 710 A.2d 412 (1998). See also Gambino v. State Farm Ins. Co., supra, 348 N.J.Super. at 207-08, 791 A.2d 1044. To accomplish this purpose, N.J.S.A. 17:28-1.1e(1) defines an underinsured motor vehicle as:
when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery.
Thus, to determine whether a plaintiffs UIM policy applies, that coverage is compared to the sum of the limits of all liability insurance policies "available" to the party or parties who allegedly caused the injuries. Regardless of the severity of the claimant's injuries, it is only when the UIM coverage exceeds the total "available" liability coverage that a claim for underinsured motorist benefits exists. See generally French v. New Jersey Sch. Bd. Assoc. Ins. Group, 149 N.J. 478, 482-83, 694 A.2d 1008 (1997). "Available" liability coverage, however, is not without limit. In this respect, we said in Gold v. Aetna Life & Cas. Ins. Co., 233 N.J.Super. 271, 558 A.2d 854 (App.Div.1989):
[W]e hold that when the statute, N.J.S.A. 17:28-1.1(e), speaks of `available' insurance coverage, it plainly refers to that of persons who are actual responsible tortfeasors and not that of those who may have been `involved' in the accident without being liable under the law. To rule otherwise would lead to the result that underinsured coverage would be eliminated whenever entirely blameless persons involved in an accident happen to be heavily insured.
[Id. at 276, 558 A.2d 854.]
See also Hreshko v. Harleysville Ins. Co., 337 N.J.Super. 104, 110, 766 A.2d 776 (App.Div.2001); CNA Ins. Companies v. Cave, 332 N.J.Super. 185, 192, 753 A.2d 141 (App.Div.), certif. denied, 165 N.J. 678, 762 A.2d 659 (2000). The threshold inquiry as to whether there is UIM coverage, *554 then, focuses upon the liability policies of "actual responsible tortfeasors."
This threshold aspect of N.J.S.A. 17:28-1.1e(1) is not before us. That is to say, neither Prudential nor Selective have asserted that the decedent's vehicle was not an "underinsured" motor vehicle within the meaning of the above cited portions of N.J.S.A. 17:28-1.1e(1). Rather, it is another provision in N.J.S.A. 17:28-1.1e(1) which they contend removes any UIM coverage. That provision states as follows:
The limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he had recovered under all bodily injury liability insurance or bonds.
[N.J.S.A. 17:28-1.1e(1) (emphasis added).]
Unlike the threshold inquiry under N.J.S.A. 17:28-1.1e(1), this aspect of the statute, which gives UIM carriers the right to a set-off or pro tanto credit for other monies received by an injured plaintiff, does not require that those monies be received from an "actual responsible tortfeasor" and, therefore, does not require either an admission of fault or an adjudication thereof. Neither is it limited to monies received from automobile tortfeasors. See Krohn v. New Jersey Full Ins. Underwriters Assoc., 316 N.J.Super. 477, 485, 720 A.2d 640 (App.Div.1998), certif. denied, 158 N.J. 74, 726 A.2d 937 (1999); Bauter v. Hanover Ins. Co., supra, 247 N.J.Super. at 99, 588 A.2d 870; Prudential Prop. & Cas. Ins. Co. v. Johnson, 238 N.J.Super. 1, 5, 568 A.2d 1193 (App.Div.1989); Nikiper v. Motor Club of Am., 232 N.J.Super. 393, 398, 557 A.2d 332 (App.Div.), certif. denied, 117 N.J. 139, 564 A.2d 863 (1989).
Thus, the UIM carriers here assert their right to a credit for the $215,000 received from the defendant manufacturer, despite the absence of any admissions of liability or fault or adjudication thereof. Were it not for the specific UIM credit provisions in their respective policies, there would be no question as to their entitlement to the credit. But Prudential's UIM policy provides in part that the UIM it agrees to pay "will be reduced by any amount recoverable from persons responsible for this accident...." The Selective UIM policy provides in part that its UIM coverage "shall be reduced by all sums ... [paid] because of the `bodily injury' or `property damage' by or on behalf of persons or organizations who may be legally responsible."
It is the use of "responsible" in the Prudential policy and "legally responsible" in the Selective policy which led Judge Cook to view the credit the carriers demand under their UIM policies as not as broad as that which the Legislature has permitted under N.J.S.A. 17:28-1.1e(1). See generally N.J.S.A. 17:28-1.1d; Capelli v. Twin City Fire Ins. Co., 209 N.J.Super. 552, 555, 508 A.2d 269 (App.Div.1986). Because he concluded the defendant manufacturer could not be considered a "responsible" party, there having been no adjudication or concession of fault, he held the credit unavailable to the carriers.
In light of the policies' language, we can understand the judge's rationale. But we are convinced that the particular circumstances here require a different result. First, as to Selective's credit provision, the reference is to a party who "may" be legally responsible. Certainly, throughout the course of discovery and up to the point of settlement, the defendant manufacturer was thought to be a viable tortfeasor. Moreover, in light of the extensive and costly pursuit of this defendant, coupled with a settlement amount which we do not consider negligible, we are convinced that objectively that defendant was thought to be a "responsible" party within the meaning of both carrier's credit provisions. Accordingly, we believe both Prudential and *555 Selective are entitled to a pro tanto credit for the settlement monies.
Given this conclusion, we need not consider the alternative contention, that being that Prudential and Selective cannot be bound by the judgment (thus, we assume, the parties must be permitted to arbitrate the UIM dispute) because of insufficient notice of the settlement. For the sake of completeness, however, we dispose of the contention. It is undisputed that both Prudential, as a UIM carrier, and Selective, were advised in writing of the litigation and of plaintiff's intent to seek UIM coverage. They each had ample opportunity to intervene at an appropriate stage in the litigation and having not done so, they should be bound by the result. Zirger v. General Acc. Ins. Co., 144 N.J. 327, 676 A.2d 1065 (1996).
What Prudential and Selective focus upon is the failure of plaintiff to notify them of the settlement offer and her intent to accept it. They claim that this violates the notice mandate of Longworth v. Van Houten, 223 N.J.Super. 174, 192, 538 A.2d 414 (App.Div.1988), as espoused by the Supreme Court in Rutgers Cas. v. Vassas, 139 N.J. 163, 174, 652 A.2d 162 (1995). It does seem clear that Selective received no notice of the settlement until after the fact. Prudential as a liability carrier obviously was aware, but not as a UIM carrier. See Kor v. National Consumers Ins. Co., 309 N.J.Super. 80, 87, 706 A.2d 776 (App.Div.), certif. denied, 156 N.J. 379, 718 A.2d 1208 (1998) (knowledge of liability adjuster imputed to same carrier on UIM claim). Even assuming each, as UIM carriers, were not given notice of the settlement until after the fact and that that was a breach of the Longworth notice requirements (see Hallion v. Liberty Mut. Ins. Co., supra, 337 N.J.Super. at 370, 766 A.2d 1224), not all Longworth breaches will foreclose UIM coverage. Hallion v. Liberty Mut. Ins. Co., supra, 337 N.J.Super. at 368-69, 766 A.2d 1224; CNA Ins. Co. v. Cave, supra, 332 N.J.Super. at 190, 753 A.2d 141; Breitenbach v. Motor Club of Am. Ins. Co., 295 N.J.Super. 328, 334-35, 685 A.2d 36 (App.Div.1996).
Here, Prudential and Selective claim they were prejudiced by the failure of plaintiff to notify them of the settlement. Selective contends it lost its right to subrogate to plaintiff's claims against the defendant manufacturer; both carriers contend the Longworth deficiency resulted in their having lost the opportunity to litigate the defendant manufacturer's fault at the trial and that that issue was never contested. Along these lines, we have recently observed that where a default damages judgment has been entered, the carrier is not bound by the judgment but may arbitrate damages even though Longworth was complied with. Vaccaro v. Pennsylvania Nat. Mut. Cas. Ins. Co., 349 N.J.Super. 133, 140-44, 793 A.2d 82 (App.Div.), certif. denied, 174 N.J. 40, 803 A.2d 635 (2002) ("Essentially, Zirger was concerned with the `avoidance of redundant litigation.' We are satisfied that Zirger contemplates a contested ... trial to bind the UM/UIM carrier. An uncontested proof hearing ... is not the equivalent of an adjudication ... so as to invalidate the contractual arbitration clause." (quoting Zirger v. General Acc. Ins. Co., supra, 144 N.J. at 335, 676 A.2d 1065)).
This was not a default judgment situation, however little the parties contested the manufacturer's fault or lack thereof. Moreover, neither Prudential, as a UIM carrier, nor Selective expressed any interest in intervening in the underlying litigation at any time prior to commencement of trial. Compare Scheer v. DiBenedetto, 346 N.J.Super. 550, 788 A.2d 830 (App.Div. 2002). At the time of settlement, it would have been too late for either to have altered *556 the course the litigation took. In this respect, plaintiff asserts that her expert would not have been able to offer a viable "crashworthiness" opinion and clearly it was far too long past the discovery period for the carriers to obtain their own expert. Further, as to Selective's subrogation rights, it would have had to pay the $215,000 offer. We doubt very much it would have done that when, at most, plaintiff had only a $100,000 UIM claim against it. Thus, we fail to see any prejudice to either Prudential or Selective incurred as a result of plaintiffs failure to notify them of the trial settlement, beyond what they had already incurred by their own determination not to intervene.
In any event, we have concluded that Judge Cook erred on the credit claims. Because the $215,000 credit exceeds the total UIM coverage, plaintiff has no viable UIM claim. Accordingly, we affirm Judge Cook in all respects but the UIM claims and remand for entry of an order dismissing those claims.
NOTES
[1] In this respect, Prudential asserts in its reply brief:

while Prudential was one of two liability carriers responding to the loss, it was New Hampshire Insurance Company, the carrier that insured the vehicle Ms. O'Brien was driving (a pick-up truck owned by her boyfriend) at the time of the accident, that appointed counsel and funded and controlled Ms. O'Brien's defense. Prudential provided additional liability coverage under a policy purchased by a resident relative of Ms. O'Brien, but had no involvement with the defense of the action against her. Indeed, since the full amount of Prudential's policy had already been deposited into court at the time trial against the bankrupt Ms. O'Brien commenced, her defense counsel would not even have needed to communicate with Prudential to discuss settlement of the tort case pursuant to its liability policy.
[2] O'Brien's petition for bankruptcy was filed during the third day of the trial. After some legal maneuvering, the bankruptcy court permitted trial to proceed. Plaintiff agreed, as to O'Brien, to be limited to the proceeds from O'Brien's liability policies.
[3] The judge concluded that the $100,000 UIM per person coverage on each of the policies was available to plaintiff but deducted therefrom the total $65,000 she received from the liability policiesthus the award of $67,500 from each UIM policy. See Gambino v. State Farm Ins. Co., 348 N.J.Super. 204, 206, 791 A.2d 1044 (App.Div.2002) ("when ... there are multiple claimants who have exhausted the tortfeasor's liability insurance, and UIM coverage is available through a split limit policy, the appropriate credit is determined by applying each injured party's recovery of liability insurance against that party's per person UIM coverage, subject only to the total per accident UIM cap set forth in the policy.").