867 A.2d 1207

MARTIN MCSHANE, PLAINTIFF–RESPONDENT/CROSS–APPEL-LANT, v. NEW JERSEY MANUFACTURERS INSURANCE COM-PANY, DEFENDANT–APPELLANT/CROSS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 26, 2005—Decided February 24, 2005.

306

Before Judges WEFING, PAYNE, and C.S. FISHER.

*Richard A. Jagen* argued the cause for appellant/cross-respondent (*Connell Foley* attorneys; *Mr. Jagen* of counsel and on the brief).

*Dean Anglin* argued the cause for respondent/cross-appellant.

The opinion of the court was delivered by

PAYNE, J.A.D.

This appeal raises the issue of whether a tortfeasor's policy limits of $100,000 or those limits as reduced to $90,831.60 through recovery by the injured claimant's insurer on its subrogated claim for property damage payments must be credited against the claimant's underinsured motorist (UIM) coverage for purposes of calculating the UIM benefits available to a claimant whose bodily injury claim exceeds all available insurance recovery. We hold under the contract at issue in this case that only the amount paid to the insured as damages for bodily injury can be credited against his own UIM policy benefits.

The issue arises from the following facts: Plaintiff Martin McShane was seriously injured in a motor vehicle accident when he was rear-ended by a truck driven by Gerald Dealmedia and owned by Rainbow General Construction Co. Rainbow had purchased combined single-limit liability insurance from Progressive Insurance Company providing $100,000 in coverage. McShane was covered as a spouse by a policy that his wife had purchased from defendant New Jersey Manufacturers Insurance Company (NJM) that included UIM coverage with limits of $300,000 combined single limit, as well as property damage coverage. Separate premiums were paid for the two coverages.

Because his car had been totaled, McShane sought benefits under the collision coverage provided by NJM. Payments in the amount of $7,607.48 were made to Ford Motor Credit Co. as lessor and in the amount of $3,287.52 to McShane's wife as lessee. NJM then recovered $9,168.40 through inter-company subrogation from Rainbow's carrier, Progressive. Five hundred dollars of that

amount was paid to Carol McShane as reimbursement for the policy deductible. Because NJM had received the salvage value of the car as well as the subrogation recovery, it actually received $423.40 in excess of its loss from the transactions.

Following institution of suit, the remainder of Progressive's $100,000 policy coverage ($90,831.60) was paid by it to McShane, with the authorization of NJM,[1] in settlement of McShane's bodily injury claim. Thereafter, in a separate action, McShane settled with NJM for the "limits of his UIM coverage." However, a dispute arose as to the treatment of the $9,168.40 paid by Progressive to NJM as a property damage subrogation recovery. NJM's counsel contended: "Your client received $100,000.00 from the tortfeasor, therefore, there is $200,000.00 available to your client." McShane's counsel took the position that McShane had only received $90,831.60 and that NJM had received the remainder.

McShane, claiming $209,168.40 to be due him because of the lesser credit against his UIM policy limits that he claimed to be proper, moved against NJM to enforce a settlement in that amount. NJM opposed the motion, arguing that it only owed $200,000. The trial judge ruled in favor of McShane, finding that he reasonably expected and was entitled to recovery of the amount by which NJM's UIM coverage limits exceeded his settlement. The court therefore entered a judgment enforcing a settlement between NJM and McShane in the amount of $209,168.40. NJM has appealed, and we affirm. McShane has cross-appealed from the trial court's denial of counsel fees. However, at oral argument before us, McShane's counsel elected not to pursue the counsel fee claim, which we now dismiss.

## I.

The UIM provisions of NJM's policy provided:

---

[1] See *Longworth v. Van Houten,* 223 *N.J.Super.* 174, 193–94, 538 *A.2d* 414 (App.Div.1988) (establishing procedures for recovery on UIM claims).

We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an ... underinsured motor vehicle because of:

1. Bodily injury sustained by an insured and caused by an accident; and
2. Property damage caused by an accident. . . .

The policy's limits of liability stated:

With respect to an accident with an underinsured motor vehicle, the limit of liability shall be reduced by all sums:

1. Paid because of the bodily injury or property damage by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of this policy [liability coverage]; and
2. Paid because of the property damage under Part D of this policy or any similar coverage under any other policy.

Also relevant to this appeal are the policy's subrogation provisions, which stated:

If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and
2. Nothing after loss to prejudice them.

Of overriding relevance are statutory provisions pertaining to UIM coverage, which provide that:

For the purpose of this section (1) "underinsured motorist coverage" means insurance for damages because of bodily injury and property damage resulting from an accident arising out of the ownership, maintenance, operation or use of an underinsured motor vehicle.

\* \* \*

The limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he has recovered under all bodily injury liability insurance or bonds.

[*N.J.S.A.* 17:28–1.1(e).]

■ The New Jersey Supreme Court has held that subrogation is an equitable device designed to compel "the ultimate discharge of an obligation by the one who in good conscience ought to pay it." *Standard Accident Ins. Co. v. Pellecchia,* 15 *N.J.* 162, 171, 104 *A.2d* 288 (1954). In an insurance context, it fulfills the dual purposes of avoiding unjust enrichment to an insured who obtains recovery for the same injury from both his insurer and the tortfeasor and, in the absence of such double recovery, of preclud-

ing the tortfeasor from escaping all liability for damages that the tortfeasor has caused. *Ibid.*

■ With these principles in mind, we turn to the underpinnings of UIM coverage, which is not designed to afford complete coverage to persons injured by motor vehicle accidents, *Bauter v. Hanover Ins. Co.*, 247 *N.J.Super.* 94, 96, 588 *A.*2d 870 (App.Div.), *certif. denied*, 126 *N.J.* 335, 598 *A.*2d 893 (1991) but, nonetheless, to provide "as much coverage as an insured is willing to purchase, up to the available limits, against the risk of an underinsured claim." *Gambino v. State Farm Ins. Co.*, 348 *N.J.Super.* 204, 207, 791 *A.*2d 1044 (App.Div.2002) (quoting *Nikiper v. Motor Club of America Cos.*, 232 *N.J.Super.* 393, 399, 557 *A.*2d 332 (App.Div.), *certif. denied*, 117 *N.J.* 139, 564 *A.*2d 863 (1989)).

■ In the present case, McShane's wife contracted for UIM coverage in the amount of $300,000. She also contracted for and paid a separate premium for collision insurance. Benefits were paid under the collision coverage provisions of the policy, and NJM received full reimbursement for them. NJM never attempted to set off those benefits against McShane's UIM coverage. We assume NJM's inaction arose from the fact that it had been made whole by its recovery from Progressive. However, we find as well that it would have been statutorily precluded from doing so. *N.J.S.A.* 17:28–1.1(e) permits the reduction of available UIM limits only by the amount that the insured "has recovered under all bodily injury liability insurance or bonds." [2] This particular recovery arose from McShane's own first-person collision coverage.

Fortuitously, the tortfeasor in McShane's case was covered by a combined single-limit Progressive policy, so that when NJM exercised its inter-company subrogation rights, having paid collision insurance benefits, that reduced the liability coverage available to McShane from $100,000 to $90,831.60. Acceptance of that amount

---

[2] The statute defines UIM *coverage* to include both bodily injury and property damage protection. However, it limits offsets to recoveries on account of bodily injuries.

did not signify any voluntary determination on McShane's part to compromise his claim, in which case it would be appropriate to treat the settlement for UIM purposes as if it were for $100,000. McShane merely accepted the entirety of the coverage available to the tortfeasor at the time the settlement was reached. There remained a claim for bodily injury that exceeded both the full liability limits of the tortfeasor's policy and his own UIM coverage.[3]

Significantly, this is not a situation in which McShane sought to or did receive duplicate benefits (despite the payment to his wife under the collision provisions of the policy), nor is it one in which the tortfeasor escaped liability entirely. For those reasons, subrogation's rationales do not justify NJM's position. To apply them in this circumstance as justification for recovery by NJM would be both "inappropriate and unjust." *Charnecky v. American Reliance Ins. Co.*, 249 *N.J.Super.* 91, 94, 592 *A.*2d 17 (App.Div.1991), *aff'd o.b.*, 127 *N.J.* 188, 603 *A.*2d 512 (1992), *overruled on other grounds, Frazier v. New Jersey Mfrs. Ins. Co.*, 142 *N.J.* 590, 667 *A.*2d 670 (1995).

As a matter of mathematics, it is immaterial whether the $9,168.40 was deducted from Progressive's policy limits, reducing by that amount the $100,000 that NJM sought to credit against McShane's UIM limits, or whether the $9,168.40 was simply subtracted from those UIM limits. In either case, the remaining available coverage would be $200,000. Yet, as we have already demonstrated, NJM was not statutorily entitled to set off its collision payments against McShane's UIM coverage. We find no reason to apply *N.J.S.A.* 17:28–1.1(e) differently when considering the amount by which McShane's policy should be reduced as the result of his settlement with the tortfeasor. As McShane has argued before us, that recovery was limited to $90,831.60, and his

---

[3] This matter did not proceed to UIM arbitration. However, NJM has never taken the position that McShane's injuries did not entitle him to a total bodily injury recovery of $300,000.

recovery should be reduced by no more than that amount. *Cf. Gambino, supra,* 348 *N.J.Super.* at 208–11, 791 *A.*2d 1044 (in a multi-claimant case, interpreting *N.J.S.A.* 17:28–1.1(e) to require a credit against UIM insurance only in the amount actually recovered by each claimant from the tortfeasor when the tortfeasor's policy limits have been exhausted by the multiple recoveries); *Calabrese v. Selective Ins. Co.,* 297 *N.J.Super.* 423, 434–35, 688 *A.*2d 606 (App.Div.1997), *overruled on other grounds, Magnifico v. Rutgers Cas. Ins. Co.,* 153 *N.J.* 406, 710 *A.*2d 412 (1998); *Filippatos v. Selective Ins. Co. of Am.,* 241 *N.J.Super.* 236, 237, 574 *A.*2d 1002 (App.Div.1990).

## II.

Our statutorily-based determination accords, as well, with principles of equitable subrogation, which we have recognized as applicable in circumstances in which neither statute nor contractual language dictate a different result. In accordance with those principles, we held in *Providence Washington Ins. Co. v. Hogges,* 67 *N.J.Super.* 475, 171 *A.*2d 120 (App.Div.1961) that an insured must be made whole before an insurer can obtain reimbursement from him for benefits paid or can be subrogated to his rights against a tortfeasor. In *Hogges,* the insured had obtained collision benefits from his insurer following an automobile accident. Thereafter, without notice to the insurer, he filed suit against the tortfeasor for bodily injury and property damage, but lost. When the insurer learned of the civil suit, it sued Hogges to recover the amount of collision benefits paid, alleging that its subrogation rights had been impaired by the insured's actions. We disagreed, finding inapt the insurer's analogy to the impairment occurring when an insured, after obtaining benefits from his own carrier, executes a general release to the tortfeasor. We stated, when construing a subrogation clause [4] similar to that in the present case:

---

[4] The clause provided:

The insurer argues, in effect, that even though the insured was not obliged to notify it when he sued for personal injuries, when he added the count for property damage he became obligated to do so, and the mere breach of that obligation entitles plaintiff [the insurer] to the refund of its payment.... We perceive no merit in plaintiff's position. Subrogation is an offspring of equity, and its equitable principles apply even when the subrogation is based on contract, except as modified by specific provisions in the contract. Here we have only the general clause quoted. Under such a clause, in case of doubt the interests of the insured come first. In the absence of express terms in the contract to the contrary, he must be made or kept whole before the insurer may recover anything from him or from a third party under its right of subrogation. Against the insured, as well as against third parties, there may be recovery by the insurer (again, subject to the express terms of the contract) 'only if the cause is just and enforcement is consonant with reason and justice.' *Standard Accident Insurance Co. v. Pellecchia,* 15 *N.J.* 162, 172, 104 *A.2d* 288 (1954); *Board of Education, Township of Woodbridge v. Kane Acoustical Co., Inc.,* 51 *N.J.Super.* 319, 327, 143 *A.2d* 853 (App.Div.1958).

[*Hogges, supra,* 67 *N.J.Super.* at 482, 171 *A.2d* 120.]

See also *Culver v. Ins. Co. of No. Am.,* 221 *N.J.Super.* 493, 500–503, 535 *A.2d* 15 (App.Div.1987) ("As a matter of equitable principle, the right of subrogation does not arise until the injured party has been made whole."), *rev'd on other grounds,* 115 *N.J.* 451 456–57, 559 *A.2d* 400 (1989).

We recognize in this context that under the precedents that we have cited earlier, the relief available to an insured is limited by the amount of UIM insurance for which the insured contracted. However, we find no decision in a UIM context that interferes with an insured's right to be made whole within these narrowed bounds. *Cf. Werner v. Latham,* 332 *N.J.Super.* 76, 79, 752 *A.2d* 832 (App.Div.2000) (holding that when a settlement with a tortfeasor does not fully compensate the claimant for his injuries, a health insurer's contractual reimbursement rights must yield to the claimant's right to a full recovery).[5] Were we to hold other-

---

In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

[5] We distinguish those cases in which reimbursement rights are statutorily mandated. *See Frazier, supra,* 142 *N.J.* at 605, 667 *A.2d* 670 (finding that UM

wise, McShane would not receive the full benefits for which his wife bargained, and the reasonable expectations of the insured as to available coverage would not be fulfilled.

Reduced to its simplest terms, the issue in this case is whether an insurer should be made whole at the expense of the insured when no statute or contract dictates that result. As the Supreme Court of Kentucky found in an uninsured motorist context:

> Granting priority to the uninsured motorist carrier would place the burden of loss squarely on the shoulders of the party least able to bear the loss [the claimant] and would defeat the age old, underlying principles of subrogation. On the other hand, granting the injured insured, not fully compensated, priority over the insurance carrier places the risk of loss on the entity paid to assume such risk.
>
> [*Wine v. Globe Am. Cas. Co.*, 917 *S.W.*2d 558, 562 (Ky.1996).]

As our Supreme Court has noted, some recognition exists for each of the following rules pertaining to the right to subrogation recoveries: (1) the insurer is the sole beneficial owner of a claim against a tortfeasor and is entitled to full recovery, even if it exceeds the amount paid to its insured; (2) the insurer is entitled to be reimbursed, with any remaining amount accruing to the insured's advantage; (3) the recovery must be prorated between insurer and insured; (4) the insured must be made whole before any reimbursement to the insurer; and (5) the insured is entitled to the full recovery. *See Culver, supra,* 115 *N.J.* at 458 n. 2, 559 *A.*2d 400 (quoting Robert Keeton, *Insurance Law* § 3.10(a)). However, the vast majority of jurisdictions have required that the insured be made whole before the insurer obtain the benefit of a recovery through subrogation. *See,* Elaine M. Rinaldi, *Apportionment of Recovery Between Insured and Insurer in a Subrogation Case,* 29 *Tort & Ins. L.J.* 803 (Summer 1994). *See also* Roger M.

---

benefits are not conceptually different from direct recovery from a tortfeasor, and thus that the statutory mandate of the workers' compensation lien applies to both); *Knox v. Lincoln Gen. Ins. Co.,* 304 *N.J.Super.* 431, 437, 701 *A.*2d 445 (App.Div.1997) (finding that the PIP statute requires that the carrier be made whole even though reimbursement may reduce the insurance available to the claimant).

Baron, *Subrogation: A Pandora's Box Awaiting Closure*, 41 *S.D.L.Rev.* 237 (1996).

We have no occasion here to discuss the various contexts in which the majority position has been adopted (which extend well beyond the realm of UIM insurance), or to urge that position be adopted in any circumstance other than the one before us. We do, however, find no equitable basis to hold in this case, simply because NJM depleted the tortfeasor's liability limits by its subrogation recovery, that McShane should be denied the full UIM recovery that he has claimed. It is not McShane who should bear the risk of loss in this insurance context; that risk properly belongs to NJM.

The judgment of the trial court is affirmed. Plaintiff's cross-appeal is dismissed.